IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Travelers Property Casualty Company of America; The Phoenix Insurance Company; and The Travelers Indemnity Company, | ) ) ) ) | C/A No. 3:20-cv-01304-SAL |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **OPINION & ORDER** |
| M.B. Kahn Construction Company, Inc.; Kahn Development Company, Inc.; National Fire Insurance of Hartford; Liberty Mutual Insurance Company; Zurich American Insurance Company; Promenade at Sandhill Condominium Association, Inc.; Big Time Plastering, Inc.; Auto-Owners Insurance Company; Owners Insurance Company; Illinois Union Insurance Company; Clarendon National Insurance Company, as successor to Sussex Insurance Company; Gemini Insurance Company; Navigators Insurance Company; Contractors of Atlanta, Inc.; Western World Insurance Company; Evanston Insurance Company, as successor to Essex Insurance Company; American Alternative Insurance Corp.; Scottsdale Insurance Company; R.W. Ford Company, Inc.; Southern Pilot Insurance Company; The Netherlands Insurance Company; Employers Mutual Casualty Company; Heritage Roofing Co., Inc.; RSUI Indemnity Company; Pennsylvania National Mutual Casualty Insurance; GR Masonry, Inc.; Montgomery Mutual Insurance Company; Walker White, Inc.; Amerisure Insurance Company; Westfield Insurance Company; Arch Insurance Company; Meetze Plumbing Co., Inc.; The Cincinnati Insurance Company; Motorists Mutual Insurance Company; Central Mutual Insurance Company, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

1

```
_____  )
                                 )
M.B. Kahn, Construction Co., Inc.,  )
                                 )
            Third-Party Plaintiff,  )
                                 )
v.                               )
                                 )
American Guarantee and Liability  )
Insurance Company; BB&T Insurance  )
Services, Inc. n/k/a McGriff Insurance  )
Services, Inc.; Admiral Insurance Company; )
Cayce Company, Inc.; and Crescent South  )
Agency, Inc.,                    )
                                 )
            Third-Party Defendants.  )
_____  )
```

Pending before the court are 78 motions. While the number of motions is large, the number of issues is smaller. Before reaching the merits of many of the dispositive motions, this court must decide three questions: (1) does it have subject matter jurisdiction to hear Plaintiffs Travelers Property Casualty Company of America, The Phoenix Insurance Company, and The Travelers Indemnity Company's (together "Travelers") claims; (2) if it finds that complete diversity is lacking, should it realign the parties to create subject-matter jurisdiction; and (3) if it declines to realign the parties and jurisdiction fails, what happens to the crossclaims, counterclaims, or third-party claims?

For the reasons outlined herein, the court concludes that it does not have subject matter jurisdiction over Travelers' claims, the court cannot realign the parties, and some third-party claims survive with an independent jurisdictional basis. For the surviving third-party claims, the court addresses the corresponding motions to dismiss.

## PROCEDURAL BACKGROUND & ARGUMENTS OF THE PARTIES

### I.  The Underlying Case.

The above-captioned matter is one of several cases stemming from a construction defect case pending in the Court of Common Pleas for Richland County, South Carolina (the "Underlying Case").[1]  By way of background, the Underlying Case involves negligence and breach of warranty claims brought by Promenade at Sandhill Condominium Association, Inc. ("Promenade") for allegedly deficient and defect work on a mixed-used building in Columbia, South Carolina. Promenade named M.B. Kahn Construction Company, Inc. ("M.B. Kahn"), the general contractor on a construction project, as well as various subcontractors as defendants in the Underlying Case. [*See* ECF No. 1, Compl. at ¶ 2, ¶¶ 62–71.]  The Subcontractors include Big Time Plastering, Inc. ("Big Time"), Contractors of Atlanta, Inc. ("Contractors of Atlanta"), R.W. Ford Company, Inc. ("R.W. Ford"), Heritage Roofing Co., Inc. ("Heritage"), GR Masonry, Inc. ("GR Masonry"), Walker White, Inc. ("Walker White"), and Meetze Plumbing Co., Inc. ("Meetze").[2]  Promenade also names Kahn Development Company, Inc. ("Kahn Development"), Village at Sandhill, LLC ("Village at Sandhill"), and VAS Condominium, LLC ("VAS Condominium"), all developers, as defendants in the Underlying Case.  *Id.* at ¶ 3.[3]

The Developers and the Subcontractors were insured by various insurance companies during the relevant period.  With the filing of the Underlying Case, the Developers and Subcontractors

---

[1] The underlying construction defect case is captioned, *Promenade at Sandhill Condominium Association, Inc. v. M.B. Kahn Construction Co., Inc. et al*., No. 2015-CP-40-2501.  The two related cases pending in this District are (1) *Big Time Plastering, Inc. v. Gemini Insurance Company et al.*, No. 3:19-cv-02324 and (2) *Cincinnati Insurance Company et al. v. Meetze Plumbing, Inc. et al*., No. 3:20-cv-02719.

[2] The court refers to these subcontractors together as the "Subcontractors."

[3] The court refers to M.B. Kahn, Kahn Development, Village at Sandhill, and VAS Condominium together as the "Developers."

3

tendered claims to their insurance companies.  M.B. Kahn, for example, tendered to several insurance companies, including Travelers.  *Id.* at ¶¶ 4–5.  This lawsuit followed.

## II. Travelers' Complaint.

Travelers, as plaintiffs and issuers of policies to M.B. Kahn, filed this action on April 6, 2020, alleging diversity jurisdiction and seeking declarations regarding the parties' respective rights, duties, and obligations under Travelers' policies.  In addition, Travelers seek to bind other entities to the declarations it seeks, seek a declaration regarding priority of coverage, and assert an equitable subrogation claim.  The claims in the Complaint are targeted against three specific groups, each of which is outlined below.

### A. Claims Asserted Against M.B. Kahn.

The first group contains only one member—M.B. Kahn.  As noted above, M.B. Kahn was the general contractor on the construction project that is the subject of the Underlying Case.  *Id.* at ¶ 58.  Travelers issued insurance policies to M.B. Kahn and was participating in M.B. Kahn's defense, subject to a full reservation of rights.  *Id.* at ¶ 1, 4, 72, 80, 88–105.

Believing it is an additional insured under the Subcontractors' insurance policies, M.B. Kahn also tendered to the insurance companies that insured the Subcontractors.[4]  *Id.* at ¶ 89.  Three—

---

[4] The court refers to the insurance companies that insured the Subcontractors as the "Subcontractor Insurers."  The Subcontractor Insurers include Defendants Auto-Owners Insurance Company, Owners Insurance Company, Illinois Union Insurance Company, Clarendon National Insurance Company, as successor to Sussex Insurance Company, Gemini Insurance Company, Navigators Insurance Company, Western World Insurance Company, Evanston Insurance Company, as successor to Essex Insurance Company, American Alternative Insurance Corporation, Scottsdale Insurance Company, Southern Pilot Insurance Company, The Netherlands Insurance Company, Employers Mutual Casualty Company, RSUI Indemnity Company, Pennsylvania National Mutual Casualty Insurance, Montgomery Mutual Insurance Company, Amerisure Insurance Company, Westfield Insurance Company, Arch Insurance Company, The Cincinnati Insurance Company, Motorists Mutual Insurance Company, and Central Mutual Insurance Company. [ECF No. 1, Compl. at ¶ 8.]

Illinois Union Insurance Company ("Illinois Union"), Amerisure Insurance Company ("Amerisure"), and the Netherlands Insurance Company ("Netherlands")—agreed to defend M.B. Kahn, with a full reservation of rights. *Id.* The others either denied a defense or have not responded to M.B. Kahn's tenders. *Id.* According to Travelers, the Subcontractor Insurers' obligations are primary to those of Travelers. *Id.* at ¶ 91.

In this case, Travelers seek declarations related to their duty to indemnify M.B. Kahn pursuant to their policies in relation to "any claims, judgment, or settlement in the Underlying Lawsuit." *Id.* at ¶¶ 109, 111. The first two declaratory judgment claims, Counts I and II,[5] are asserted solely against M.B. Kahn. *Id.* at ¶¶ 106–111 (Count I), ¶¶ 112–117 (Count II). Travelers frame the dispute as "whether or to what extent Travelers is obligated under the [primary or excess policies] *to indemnify* M.B. Kahn in connection with the claims asserted against M.B. Kahn in the Underlying Lawsuit[.]" *Id.* at ¶¶ 107, 113 (emphasis added); *see also id.* at ¶¶ 109 110, 111, 115, 116 (all focusing on the duty to indemnify).

**B. Claims Asserted Against Subcontractor Insurers.**

Travelers' second group is the "Subcontractor Insurers."[6] Subcontractor Insurers are insurance companies that issued insurance policies to the Subcontractors that participated in the construction project under M.B. Kahn. *Id.* at ¶ 8.

The Complaint alleges that the contracts between M.B. Kahn and the Subcontractors included language "obligat[ing] the Subcontractors to maintain insurance for themselves, M.B. Kahn, and Village at Sandhill." *Id.* at ¶ 60. As a result of this contractual language, Travelers' position is that the "Subcontractor Insurers are obligated to defend and indemnify M.B. Kahn *on a primary*

---

[5] "Declaratory Judgment—Duty to Indemnify under Travelers Primary Policies" and "Declaratory Judgment—Duty to Indemnify under Travelers Excess Policies," respectively.
[6] *See* footnote 4, *supra.*

*and noncontributory basis* and that any obligation Travelers may have to defend or indemnify M.B. Kahn is excess to the Subcontractor Insurers obligations[.]" *Id.* at ¶ 16 (emphasis added).

Travelers assert three claims against the Subcontractor Insurers. First, Travelers seek to bind the Subcontractor Insurers to the indemnification declarations they seek in relation to M.B. Kahn. *Id.* at ¶¶ 118–119 (Count III, seeking to bind Subcontractor Insurers to determinations of Counts I and II). Second, Travelers assert a claim for "Declaratory Judgment—Priority." *Id.* at ¶¶ 120–123 (Count IV). Travelers assert that the Subcontractor Insurers are required to defend and indemnify M.B. Kahn on a primary and noncontributory basis," making Travelers' duties, if any, "excess" to that of the Subcontractor Insurers. *Id.* at ¶ 121. The controversy between is described as one of "priority in which coverage is owed to M.B. Kahn." *Id.* at ¶ 122. Third, Travelers assert an equitable subrogation claim for reimbursement of the "attorneys' fees and costs Travelers incurred in defense of M.B. Kahn . . . before the Subcontractor Insurers assumed M.B. Kahn's defense[.]" *Id.* at ¶¶ 134–136. Travelers contends that it is entitled to reimbursement of the fees it expended on M.B. Kahn's defense before the Subcontractor Insurers assumed M.B. Kahn's defense.

**C. Claims to Bind Other Defendants.**

The third group in Travelers' Complaint consists of defendants named for purposes of binding them to this court's determinations as to Counts I and III (declarations regarding Travelers' duty to indemnify M.B. Kahn) and Count IV (priority declaration against the Subcontractor Insurers). *Id.* at ¶¶ 124—133. This group consists of the following entities:

- the Subcontractors;[7]

- Kahn Development;[8]

- the "Developers' Insurers;"[9] and

- Promenade.[10]

Many crossclaims, counterclaims, third-party claims, and motions followed the filing of Travelers' Complaint. A brief review of the claims and motions of each party provides the backdrop for the court's rulings.

### III. M.B. Kahn's Counterclaims, Crossclaims, Third-Party Claims.

M.B. Kahn answered Travelers' Complaint, filed counterclaims against Travelers, crossclaims against Zurich and the Subcontractor Insurers, and third-party claims against American Guarantee and Liability Company ("American Guarantee"), BB&T Insurance Services, Inc., n/k/a McGriff

---

[7] This group includes Big Time, *id.* at ¶ 26, Contractors of Atlanta, *id.* at ¶ 33, R.W. Ford, *id.* at ¶ 38, Heritage, *id.* at ¶ 42, GR Masonry, *id.* at ¶ 45, Walker White, *id.* at ¶ 47, and Meetze, *id.* at ¶ 51. Defendant Central Mutual Insurance Company is named as a Subcontractor Insurer, but its corresponding insured, Aluminum Designs, LLC, is not named as a defendant in the action. *See id.* at ¶ 54.

[8] Travelers believe that Kahn Development contends it is entitled to a defense and indemnity from the Subcontractor Insurers and the Developers' Insurers. *Id.* at ¶¶ 13, 15. Because M.B. Kahn also claims it is entitled to a defense and indemnity, Travelers believe the declarations they seek in this suit "will impact whether or to what extent Kahn Development is entitled to coverage" under the policies. *Id.* at ¶¶ 13, 15 Travelers also seek to bind Kahn Development's insurers. *Id.* at ¶ 14.

[9] Travelers identify the insurance companies that issued policies to Kahn Development, Village at Sandhill, and VAS Condominium as the "Developers' Insurers." *Id.* at ¶ 3 (identifying the "Developers"), ¶ 14 (identifying the "Developers' Insurers"). The "Developer Insurers" are Defendants National Fire Insurance of Hartford, Liberty Mutual Insurance Company, and Zurich. *Id.* at ¶ 14. Again, for the sake of consistency, this court will refer to these entities together as the "Developers' Insurers."

[10] Promenade is the plaintiff in the Underlying Case. *Id.* at ¶¶ 2, 62–71.

Insurance Services, Inc. ("BB&T"), Cayce Company, Inc. ("Cayce Company"), Crescent South Agency, Inc. ("Crescent South"), and Admiral Insurance Company ("Admiral"). [ECF No. 83.][11]

As to Travelers, M.B. Kahn asserts counterclaims for declaratory judgment (as to both Travelers' duty to defend and their duty to indemnify), *id.* at ¶¶ 185–191, breach of contract, *id.* at ¶¶ 192–198 (alleging wrongful denial of claims and withdrawal from defense), and bad faith/breach of the duty of good faith and fair dealing, *id.* at ¶¶ 199–205.

M.B. Kahn's crossclaims against Zurich and third-party claims against American Guarantee[12] include a declaratory judgment claim (as to duties to defend and indemnify), *id.* at ¶¶ 257–264, reformation based on mutual mistake, *id.* at ¶¶ 265–269, reformation based on unilateral mistake, *id.* at ¶¶ 270–274, breach of contract, *id.* at ¶¶ 275–282, bad faith/breach of the duty of good faith and fair dealing, *id.* at ¶¶ 283–289, negligent misrepresentation, *id.* at ¶¶ 290–295, and fraud/constructive fraud, *id.* at ¶¶ 296–303. The related third-party claims against BB&T include breach of contract, id. at ¶¶ 304–308, and negligence, *id.* at ¶¶ 309–314.[13]

---

[11] R.W. Ford, Westfield Insurance Company, Central Mutual Insurance Company, Employers Mutual Casualty Company, American Alternative Insurance Company, Cincinnati Insurance Company, Gemini Insurance Company, Kahn Development, Arch Insurance Company, Scottsdale Insurance Company, Pennsylvania Mutual Casualty Insurance, Motorist Mutual Insurance Company, Big Time, Navigators Insurance Company, Evanston Insurance Company, Illinois Union Insurance Company, Promenade, Pennsylvania National Mutual Casualty Insurance, Western World Insurance Company, Meetze, Zurich, and RSUI Indemnity Company replied to the crossclaims. [ECF Nos. 105, 140, 212, 235, 250, 252, 253, 255, 269, 281, 289, 313, 319, 324, 341, 351, 366, 384, 399, 403 (Big Time's amended reply), 548 (Western World's amended reply), 612, 260 (reply to crossclaims by Zurich).] Travelers submitted a reply and additional defense to M.B. Kahn's counterclaims. [ECF No. 262.] Three third-party defendants, Admiral, Cayce Company, and American Guarantee, answered the third-party complaint. [ECF Nos. 198, 260, 297.]

[12] M.B. Kahn alleges that from July 1, 2012 to July 1, 2016, its commercial general liability coverage was placed with Zurich and its excess/umbrella coverage was placed with American Guarantee. [ECF No. 83 at ¶ 219.]

[13] M.B. Kahn alleges BB&T provided insurance brokerage services to M.B. Kahn in relation to the Zurich and American Guarantee policies. *Id.* at ¶ 216. M.B. Kahn's third-party claims against BB&T are slightly different from its other claims. They relate to a brokerage service agreement

Relying on its contracts with the Subcontractors, M.B. Kahn asserts a coverage declaratory judgment crossclaim against the Subcontractor Insurers. It contends that coverage is available to it under the policies issued to the Subcontractor Insurers. *Id.* at ¶¶ 357–362.[14] M.B. Kahn also asserts a claim for breach of contract against the Subcontractor Insurers.[15] *Id.* at ¶¶ 363–373. The third crossclaim, bad faith/breach of the covenant of good faith and fair dealing, is asserted against a select group of Subcontractor Insurers that either ignored M.B. Kahn's tender or failed to properly investigate the claims. *Id.* at ¶¶ 374–380. Relatedly, M.B. Kahn asserts a crossclaim against the Subcontractors and a third-party claim against Cayce Company, asking for a declaration binding the Subcontractors, including Cayce Company, to the declaratory relief M.B. Kahn seeks against the Subcontractor Insurers. *Id.* at ¶¶ 382–385.

Finally, M.B. Kahn asserts third-party claims for negligence and negligent misrepresentation against Crescent South and Admiral. *Id.* at ¶¶ 386–419. These claims relate to insurance policies obtained by Contractors of Atlanta, a subcontractor. The certificates of insurance on Contractors of Atlanta's policies were issued by Crescent South. The policies were issued by Admiral. *Id.* at ¶ 399. M.B. Kahn alleges that the certificates of insurance state that the policies are "occurrence-based," but Admiral claims the policies are "claims-made." M.B. Kahn's claims against Crescent South and Admiral, much like the claims against BB&T, are contingent. If M.B. Kahn is found liable in the Underlying Case, and if the policies are found not to provide coverage to M.B. Kahn,

---

in which M.B. Kahn contends BB&T agreed to procure coverage and check the policies procured for accuracy. *Id.* at ¶¶ 304–314. The claims have two contingencies. First, the Zurich and American Guarantee policies must be found not to provide coverage. Second, the two policies must not be reformed. If those two contingencies are met, M.B. Kahn claims it is entitled to damages from BB&T for negligence and breach of contract.

[14] M.B. Kahn's declaratory judgment crossclaim also includes a counterclaim against Travelers as the insurers of a Subcontractor, Cayce Company. *Id.* at ¶¶ 317–318.

[15] M.B. Kahn notes that of the Subcontractor Insurers, Illinois Union, Amerisure, and Netherlands are participating in its defense. *Id.* at ¶ 367.

M.B. Kahn claims it is entitled to damages for Crescent South and Admiral's alleged negligence or negligent misrepresentation in issuing the contradictory certificates of insurance and policies.

## IV. M.B. Kahn's Motions.

In addition to answering Travelers' Complaint and asserting its own claims, M.B. Kahn filed the first of the now-78 pending motions—a motion to dismiss Travelers' Complaint for lack of jurisdiction. [ECF No. 73.] In the motion, M.B. Kahn argues the case must be dismissed because there is not complete diversity between the parties, and therefore, this court lacks subject matter jurisdiction.

Travelers' Complaint alleges that they are corporations organized and existing pursuant to the laws of Connecticut with their principal offices in Connecticut. [ECF No. 1 at ¶ 19.] In the motion, M.B. Kahn contends that Travelers may have principal offices in New York. Either way, M.B. Kahn argues that complete diversity is lacking because there are defendants with principal offices in New York and Connecticut—Clarendon National Insurance Company ("Clarendon") in New York and Navigators Insurance Company ("Navigators") in Connecticut. [ECF No. 73 at pp.5–6.] Without complete diversity between the parties, the only stated jurisdictional basis fails.[16]

Travelers respond that they are solely Connecticut citizens and no other entity is a citizen of Connecticut; the allegedly necessary parties can be joined without depriving the court of subject

---

[16] In addition to the jurisdictional argument, M.B. Kahn argues Travelers failed to join necessary parties; namely, one of M.B. Kahn's insurance carriers (American Guarantee), a subcontractor (Cayce Company), and several Subcontractor Insurers. [ECF No. 73 at pp.6–7.] As a result, M.B. Kahn argues the action does not provide complete relief among the parties. *Id.* Finally, M.B. Kahn argues in the alternative that abstention is appropriate due to the potential for entanglement with the ongoing state proceedings. *Id.* at pp.8–10.

matter jurisdiction; and M.B. Kahn seeks abstention (which Travelers' claim is not warranted) under the incorrect standard. [ECF No. 147.] [17]

In addition to the motion to dismiss Travelers' Complaint, M.B. Kahn filed a Motion to Bifurcate and Stay ("bifurcation motion"). [ECF No. 84.] In the bifurcation motion, M.B. Kahn relies on Rule 42(b), FRCP and asks the court to "bifurcate litigation regarding the Plaintiffs' and other insurance companies' duties to defend M.B. Kahn from litigation regarding their duties to indemnify." *Id.* at p.2. The basis being that claims related to indemnification are not ripe until the conclusion of the Underlying Case. M.B. Kahn states that it will agree to stay its claims concerning indemnification until the Underlying Case is resolved. *Id.* Travelers oppose the requested bifurcation and stay. [ECF No. 143.][18]

## V. Kahn Development's Claims.

Kahn Development, a developer-entity and named-defendant in the Underlying Case, is a member of Travelers' "third group." Kahn Development is named as a defendant in this case to bind it to any resulting declarations requested by Travelers. It answered Travelers' Complaint, but also asserted its own claims.

In Kahn Development's answer, it purports to assert a declaratory judgment counterclaim and crossclaim as "Kahn Development, VAS Condominium, LLC, and Village Sandhill, LLC." [ECF No. 419 at ¶¶ 56–62.][19] The allegations are slim, but essentially Kahn Development is seeking a

---

[17] M.B. Kahn replied on June 4, 2020. [ECF No. 183.] This motion is ripe for resolution by the court.

[18] M.B. Kahn replied on June 5, 2020. [ECF No. 189.] This motion is also ripe for resolution by the court.

[19] Kahn Development answered on May 11, 2020, [ECF No. 98], but thereafter moved to amend the pleading. [ECF No. 314.] The motion to amend was granted without opposition, [ECF No. 416], and the operative pleading was filed on July 20, 2020. [ECF No. 419.] Pennsylvania Mutual Casualty Insurance, Navigators, Cincinnati Insurance Company, Gemini Insurance Company, Western World Insurance Company, Central Mutual Insurance Company, Evanston Insurance

declaration regarding defense and indemnity under several policies.  *Id.* at ¶ 60 (defining its reference to "coverage rights" as "both the duty to defend and the duty to indemnify").  Kahn Development claims that it is either an insured or an additional insured under the policies issued by the following insurers: Travelers, National Fire Insurance of Hartford ("Hartford"), Liberty Mutual Insurance Company ("Liberty Mutual"), Zurich American Insurance Company "Zurich"), and all of the Subcontractor Insurers.  *Id.* at ¶¶ 58–59.  Kahn Development seeks a "declaration regarding the rights, duties, and responsibilities of the Plaintiffs and the other insurance carrier defendants and excess insurance carrier defendants[.]"  *Id.* at ¶ 61.

## VI. Kahn Development's Motion to Dismiss Travelers' Complaint.

In addition to asserting its own claims, Kahn Development moved to dismiss Travelers' Complaint, arguing that Travelers failed to join necessary parties pursuant to Rule 19, FRCP.  [ECF No. 97.][20]  Specifically, Kahn Development argues that Travelers omitted Village Sandhill and VAS Condominium, which are named parties to the underlying lawsuit, and omitted several of Kahn Development's insurance carriers as parties to this action.  *Id.*  According to Kahn Development, "obtaining a global declaration regarding insurance coverage" is not possible without these additional parties.  *Id.*  Kahn Development requests dismissal of Travelers' Complaint.

---

Company, Illinois Union Insurance Company, Westfield Insurance Company, RSUI Indemnity Company, M.B. Kahn, Arch Insurance Company, American Alternative Insurance Corporation, Zurich, and Amerisure Insurance Company replied to the counterclaims and crossclaims.  [ECF No. 429, 454, 455, 457, 462, 465, 466, 472, 481, 482, 485, 491, 501, 512, 566.]  Several other Subcontractor Insurers filed motions to dismiss Kahn Development's crossclaim.  Those motions are outlined in section VII(C), *infra*.

[20] Travelers responded to the motion on May 29, 2020, and Kahn Development replied.  [ECF Nos. 147, 188.]

Travelers respond that the entities may be joined, and there is no indication that joining them destroys diversity.  [ECF No. 147.]

## VII.    Subcontractor Insurers' Motions.

The Subcontractor Insurers are named as defendants in Travelers' Complaint, crossclaim defendants in some of M.B. Kahn's claims, and crossclaim defendants in Kahn Development's claims.  It should come as no surprise then that many of the remaining dispositive motions in this case are those filed by the Subcontractor Insurers in response to the claims asserted against them. Each category of motions is briefly addressed below.

### A.  Subcontractor Insurers' Motions to Dismiss Travelers' Complaint.

In addition to the two-aforementioned motions to dismiss by M.B. Kahn and Kahn Development, there are 14 motions to dismiss Travelers' Complaint filed by the Subcontractor Insurers.  [*See* ECF Nos. 126 (Auto-Owners), 128 (RSUI), 142 (Clarendon), 154 (Liberty Mutual), 159 (American Alternative), 163 (Montgomery Mutual), 165 (Netherlands), 197 (Motorists Mutual), 218 (Cincinnati Insurance), 242 (Navigators), 247 (Western World), 287, 288 (Scottsdale Insurance), 452 (Southern Pilot), 514 (Amerisure).]  The court will refer to these motions together as the Subcontractor Insurers' motions to dismiss.

The Subcontractor Insurers' motions to dismiss generally argue three points: (1) Travelers have not alleged an injury-in-fact, the claims related to the duty to indemnify are not ripe, and/or the court should abstain from hearing the claims; (2) Travelers are strangers to the contract between the Subcontractor Insurers and the Subcontractors and therefore fail to state a claim; and (3) *Sloan Construction Company v. Central National Insurance Company of Omaha*, 236 S.E.2d 818 (S.C. 1977) bars the equitable subrogation claim.

Travelers filed two omnibus oppositions, which oppose all three bases for dismissal. [ECF Nos. 383, 538.] As to the "ripeness"-type arguments, Travelers argue this case is "unique" given "M.B. Kahn's responsive pleading" and the claims asserted therein. [ECF No. 383 at p.16.] Because M.B. Kahn asserts claims against Travelers and the Subcontractor Insurers, Travelers claim "[t]he only way to afford complete relief . . . is to allow this matter to proceed with all parties[.]" *Id.* at p.18. Travelers maintain that "there are significant coverage issues . . . that require this Court's attention." *Id.* at p.19. They also challenge abstention for the same reasons they state in opposition to M.B. Kahn's motion to dismiss. *See id.* at pp.19–20. Finally, while recognizing that South Carolina law is restrictive in this area, Travelers argue *Sloan* does not preclude its equitable subrogation claim. Specifically, Travelers argue that they and the Subcontractor Insurers do not insure identical risk. *Id.* at p.21.

**B. Subcontractor Insurers' Motions to Dismiss M.B. Kahn's Crossclaims.**

As noted above, M.B. Kahn asserts declaratory judgment crossclaims against the Subcontractor Insurers[21] based on its contention that it is an "additional insured" pursuant to those policies. [ECF No. 83 at ¶¶ 316–381.] Five Subcontractor Insurers—American Alternative Insurance Corporation ("AAIC"), Clarendon, Montgomery Mutual Insurance Company ("Montgomery Mutual"), Netherlands, Southern Pilot Insurance Company ("Southern Pilot")—filed motions to dismiss M.B. Kahn's crossclaims. [ECF Nos. 251,[22] 377, 378, 398, 400, 580.]

Much like with Travelers' indemnification declaration, AAIC argues that M.B. Kahn's declarations related to the duty to indemnify are not ripe. [ECF No. 251.] M.B. Kahn opposes the

---

[21] M.B. Kahn's definition of Subcontractor Insurers includes Travelers as insurers of Cayce Company, a subcontractor of M.B. Kahn. [ECF No. 83 at ¶¶ 317–318.]

[22] It appears AAIC filed two nearly identical motions to dismiss M.B. Kahn's crossclaims. [*See* ECF Nos. 244, 251.] The court concludes that ECF No. 251 was intended to replace ECF No. 244.

motion, arguing the proper remedy for addressing the unripe claim is to stay the case pending final adjudication of the Underlying Case.  [ECF No. 325.][23]  Southern Pilot adopts AAIC's arguments for dismissal of M.B. Kahn's crossclaims.  [ECF No. 580.]  M.B. Kahn's opposition incorporates certain arguments from prior filings.  [ECF No. 582.]

Clarendon argues that M.B. Kahn's crossclaims against it fail as improper "claim splitting" and pursuant to the "first to file" rule.  [ECF No. 377.]  As noted in footnote 1, *supra*, a related action titled, *Big Time Plastering, Inc. v. Gemini Insurance Company et al.*, No. 3:19-cv-02324, remains pending before this court.  In *Big Time*, M.B. Kahn filed a claim against Clarendon seeking a declaration that it is an additional insured under Clarendon's policy and that Clarendon owes it a duty to defend.  In this case, M.B. Kahn seeks the same declaration regarding the duty to defend, but also asserts claims for breach of contract and bad faith/breach of the duty of good faith and fair dealing.  Given that *Big Time* was filed first, Clarendon seeks dismissal based on the "first to file" rule.  Further, Clarendon argues that allowing the two new claims to go forward in this action would result in improper claim splitting.  M.B. Kahn opposes the motion.  [ECF No. 431.]  It argues that neither the "first to file" rule nor the rule against "claim splitting" applies here because the parties between the two cases are "very different."  *Id.* at pp.6–7.  Further, M.B. Kahn suggests that if the court believes the arguments have merit, it should defer ruling until after the deadline to amend pleadings in *Big Time* passes[24] and it resolves the other pending motions to dismiss.  *Id.* at p.7.[25]

---

[23] AAIC replied on July 14, 2020.  [ECF No. 397.]  The motion is ripe for resolution by the court.
[24] The court hereby takes judicial notice of the July 17, 2020 *Big Time* deadline, and M.B. Kahn's amended pleading filed on December 8, 2020, which asserts claims for (1) declaratory judgment—coverage and (2) breach of contract against Clarendon.
[25] Clarendon replied on July 31, 2020.  [ECF No. 469.]  This motion, like the others, is ripe for resolution.

Montgomery Mutual's and Netherlands's motions to dismiss argue that M.B. Kahn lacks standing to pursue a claim related to the duty to defend because they are already providing defenses to M.B. Kahn in the Underlying Case.  They agree that the duty to indemnify is not ripe.  [ECF Nos. 398, 400.]  M.B. Kahn opposes both motions, arguing its duty to defend claim is ripe and the duty to indemnify should be bifurcated and stayed pending resolution of the Underlying Case.  [ECF No. 449, 450.][26]

### C.  Subcontractor Insurers' Motions to Dismiss Kahn Development's Crossclaims.

Seven Subcontractor Insurers also move to dismiss Kahn Development's crossclaims.  [ECF Nos. 434 (Auto-Owners), 435 (Liberty Mutual),[27] 458 (Clarendon), 473 (Motorist Mutual), 498 (Montgomery Mutual), 499 (Netherlands), 500 (AAIC).]  The arguments in these motions are substantially similar to the arguments raised for dismissal of M.B. Kahn's crossclaims.

Auto-Owners, Liberty Mutual, and Motorist Mutual[28] argue Kahn Development lacks Article III standing and, as a result, this court lacks subject matter jurisdiction.  This argument relates to the Underlying Case remaining unresolved.  Without a judgment in the Underlying Case, the duty to indemnify is not ripe.  Alternatively, they argue that the court should abstain from deciding the indemnity question.  Kahn Development "agrees that complete adjudication of the duty to indemnify is likely premature," but argues the court should adjudicate the issue "raised specifically by Travelers in its complaint," that is "who is primary and who is excess for Kahn."  [ECF No.

---

[26] Montgomery Mutual and Netherlands filed replies on August 4, 2020.  [ECF Nos. 486, 487.]

[27] Auto-Owners and Liberty Mutual filed motions to dismiss related to Kahn Development's original pleading, *see* footnote 19, *supra*.  [ECF Nos. 272 (filed by Auto-Owners), 273 (filed by Liberty Mutual).]  Auto-Owners and Liberty Mutual incorporated the arguments within those original motions into their operative motions, ECF Nos. 434, 435.  As a result, the court considers the arguments in ECF Nos. 272 and 273 as if they were raised anew in ECF Nos. 434 and 435.

[28] Motorist Mutual adopts Auto-Owners's arguments, and Kahn Development adopts its response in opposition to Auto-Owners's motion.  [*See* ECF Nos. 473, 520.]

471 at pp.2–3; *see also* ECF No. 470 (arguing issue of who—between its direct insurers and subcontractor insurers—is primary versus excess).]

In addition, Auto-Owners and Liberty Mutual argue that Kahn Development has not stated a claim against them, given the lack of a contractual relationship between the entities. Auto-Owners argues that Owners Insurance Company issued a policy to Big Time, not Auto-Owners. Thus, its position is that there is no contractual relationship between Auto-Owners and Kahn Development. [ECF No. 272.] Kahn Development responds that Auto-Owners and Owners are affiliates and, therefore, the claim should proceed against Owners. [ECF No. 470 at p.2.] Similarly, Liberty Mutual argues it did not issue policies to any of the parties in the Underlying Case. [ECF No. 273.] Kahn Development responds that Liberty Mutual Fire Insurance Company and Liberty Insurance Company should be substituted for current-defendant Liberty. [ECF No. 471 at p.2.]

Montgomery Mutual and Netherlands join Auto-Owners and Liberty Mutual in arguing that Kahn Development's claims related to the duty to indemnify are not ripe. [ECF Nos. 498, 499.] Relatedly, they argue that the question of primary versus excess is also unripe given that the court cannot establish priority of coverage without first knowing which policies are implicated, a question tied directly to liability. Kahn Development filed a consolidated opposition, "conced[ing] that the respective indemnity obligations . . . are generally not ripe for adjudication" and submitting that the declaration regarding the duty to defend is ripe and *Sloan* does not apply. [ECF No. 559.][29]

Clarendon's motion to dismiss raises similar arguments. [ECF Nos. 458, 459.] It argues that Kahn Development is not in privity with Clarendon and the duty to indemnify is not ripe. Further,

---

[29] Montgomery Mutual and Netherlands submitted replies on August 31, 2020. [ECF Nos. 571, 572.]

relying on *Big Time*, Clarendon argues that Kahn Development's claims against it are barred by the first-to-file rule and prohibition on claim splitting.[30]

American Alternative joins the others in challenging the ripeness of the duty to indemnify claim and submits that Kahn Development has not pleaded a claim against it as to the duty to defend. [ECF No. 500.] Again, Kahn Development "concedes that typically a request for [] declaratory relief as to indemnity is not ripe until factual findings are made in the underlying lawsuit." [ECF No. 558 at p.3 n.1.] But it also argues that the duty to defend and the priority issues are ripe for adjudication. *Id.*[31]

## VIII. Developer Insurers' Claims.

Kahn Development is not the only entity in Travelers' "third group" that asserts counterclaims and crossclaims in this matter. Two Developer Insurers—Zurich and Hartford—filed their own counterclaims against Travelers and crossclaims against the Subcontractor Insurers. These claims largely mirror Travelers' claims, and are the subject of numerous motions to dismiss.

### A. Zurich's Claims.

Before outlining the motions, the court will begin with some background on each Developer Insurer. The first, Zurich, is an insurance company that issued policies to M.B. Kahn and Kahn Development. [*See* ECF No. 231 at ¶ 142.] In relation to the Underlying Case, M.B. Kahn and Kahn Development tendered their defenses to Zurich, and Zurich is providing a defense subject to a reservation of rights. *Id.* at ¶ 154. M.B. Kahn and Kahn Development also tendered to the Subcontractors and Subcontractor Insurers. Some of the Subcontractor Insurers assumed the

---

[30] Kahn Development was granted an extension of time to respond to Clarendon's motion, but failed to file a response. [*See* ECF No. 510 (requesting extension); ECF No. 517 (granting extension to August 21, 2020).] The court, therefore, considers Clarendon's motion unopposed.

[31] American Alternative replied on August 28, 2020. [ECF No. 564.]

defenses of M.B. Kahn and Kahn Development and others did not. *Id.* at ¶¶ 155–157. In this action, Zurich answers Travelers' Complaint and asserts the following claims against Travelers and "all defendants:" (1) declaratory judgment—duty to indemnify under its policies; (2) declaratory judgment—priority of coverage; (3) equitable subrogation; and (4) binding declaration against all defendants. *Id.* at ¶¶ 163–179.

More specifically, Zurich seeks a declaration regarding whether, and to what extent, it is obligated to indemnify M.B. Kahn and/or Kahn Development in the Underlying Case. *Id.* at ¶¶ 163–169. Then, it seeks a declaration regarding priority of coverage; namely, that the Subcontractor Insurers are obligated to defend and indemnify M.B. Kahn and Kahn Development on a "primary and non-contributory basis" and Zurich's obligation, if any, is excess. *Id.* at ¶¶ 170–171. Third, it seeks a declaration and judgment for the fees it expended before the Subcontractor Insurers assumed the defense pursuant to a theory of equitable subrogation. *Id.* at ¶¶ 172–176. Finally, Zurich seeks to bind all parties to the declarations it seeks. *Id.* at ¶ 177–179. If these claims seem familiar, they should. Travelers seek the same relief.

### B. Hartford's Claims.

Hartford is the second Developer Insurer with claims asserted against Travelers and the other defendants.[32] Hartford insured Kahn Development. Its claims, much like those of Zurich, mirror Travelers' claims. [ECF No. 256.]

Hartford states that it is defending Kahn Development, Village at Sandhills, and VAS Condominium in the Underlying Case. *Id.* at ¶ 142. It alleges that pursuant to the agreements between M.B. Kahn and the Subcontractors, the Subcontractors were required to purchase policies

---

[32] Unlike Travelers and Zurich, Hartford is currently defending certain entities in the Underlying Case.

that would require defense and indemnity coverage for M.B. Kahn and M.B. Kahn's "interrelated affiliates," including Kahn Development. *Id.* at ¶¶ 143–148. Hartford asserts two crossclaims, (1) declaratory relief—indemnity from Subcontractors and (2) declaratory relief—defense and indemnity from Subcontractor Insurers, and two counterclaims: (1) declaratory relief—defense and indemnity against Travelers as insurer of M.B. Kahn and (2) declaratory relief—defense and indemnity against Travelers as insurer of Cayce Company.

### C. Subcontractor Insurers' Motions to Dismiss Zurich's and Hartford's Claims.

There are 21 pending motions related to Zurich's[33] and Hartford's[34] crossclaims. Apart from a few outlier arguments, many of the arguments are the same or substantially similar. They include: (1) lack of standing/no injury in fact/no actual controversy; (2) ripeness; (3) abstention; (4) lack of a contractual relationship; (5) Sloan bar to relief; and (6) failure to plead in accordance with Rule 8, FRCP. Zurich and Hartford oppose dismissal. [*See* ECF Nos. 523, 524.]

### IX. Third-Party Defendants' Motions to Dismiss M.B. Kahn's Third-Party Claims.

The final dispositive motions seek dismissal of M.B. Kahn's third-party claims. Two of the five third-party defendants, BB&T and Crescent South, move to dismiss the third-party claims.

---

[33] The following motions relate to Zurich's crossclaims: ECF Nos. 329 (Auto-Owners), 330 (Liberty Mutual), 333 (Scottsdale), 336 (Westfield), 338 (RSUI), 370 (American Alternative), 373, 374 (Clarendon), 426 (Navigators), 447 (Montgomery Mutual), 448 (Netherlands), 464 (Western World), 478 (Cincinnati). Zurich submitted an omnibus response in opposition. [*See* ECF No. 504.]

[34] The following motions relate to Hartford's crossclaims: ECF Nos. 329 (Auto-Owners), 426 (Navigators), 354 (RSUI), 359 (Scottsdale), 363 (American Alternative), 372 (Westfield), 375, 376 (Clarendon), 463 (Western World), 467 (Montgomery Mutual), 468 (Netherlands), 476 (Cincinnati). Hartford submitted two omnibus responses in opposition. [*See* ECF Nos. 503, 508.] Additionally, M.B. Kahn responded to RSUI's motion to dismiss Hartford's crossclaims, taking no position as to RSUI's first two arguments, but asserting that the third argument is premature. [ECF No. 407.]

BB&T, M.B. Kahn's insurance broker, claims that the third-party claims are premature, *i.e.*, not ripe for judicial review, and fail to state a claim. [ECF No. 337.] BB&T argues that M.B. Kahn's claim against it is contingent upon M.B. Kahn being found liable in the Underlying Case and further contingent upon the finding of liability implicating the Zurich and American Guarantee policies. There must also be a separate finding that the policies do not provide coverage. If all contingencies properly align, M.B. Kahn's claim that BB&T is liable to it for failing to procure proper insurance coverage would then be ripe. In opposition, M.B. Kahn argues Rule 14, FRCP specifically contemplates contingent claims such as the claims it asserts against BB&T and its claims are properly pleaded. [ECF No. 409.][35]

Crescent South also seeks dismissal of M.B. Kahn's third-party claims, but it argues the court lacks personal jurisdiction over it. [ECF No. 394.] M.B. Kahn opposes the motion. [ECF No. 439.] Relying on a certificate of insurance made part of the record by Crescent South, M.B. Kahn argues the court has specific jurisdiction over Crescent South. *Id.*[36]

## X.  Where We Stand Now: A Visual.

Despite the court's best efforts to simplify the relationships and issues, it realizes the last 20 pages of procedural background may be "as clear as mud."[37] Thus, before the court turns to Travelers' request to turn the current state of the parties and litigation on its head, a visual representation may be beneficial:

---

[35] BB&T replied on July 24, 2020. [ECF No. 432.]

[36] Crescent South replied on August 3, 2020, maintaining its position that the court lacks personal jurisdiction over it, but also stating that it would not oppose jurisdictional discovery. [ECF No. 484.]

[37] That is, not clear at all. *See As clear as mud*, Merriam-Webster (online ed. 2021), https://www.merriam-webster.com/dictionary/as%20clear%20as%20mud.



## XI. Travelers' Motion to Realign Parties.

As the parties are filing their crossclaims, counterclaims, third-party claims, and accompanying motions practice, Travelers realize they have a problem. Just as M.B. Kahn suggested many months before, this court may lack subject matter jurisdiction due to lack of complete diversity between the parties. [*See* ECF No. 73.]

On July 7, 2020, Navigators, a Subcontractor Insurer, files an Answer to M.B. Kahn's crossclaim. [ECF No. 341.] Therein, Navigators affirmatively states that it is a company

"incorporated in New York" and "as of March 2019[,]" its "principal place of business is in Connecticut." *Id.* at ¶ 6. This is problematic for Travelers, as they are also incorporated and hold their principal places of business in Connecticut. [ECF No. 1 at ¶ 19; see also ECF No. 494 at p.8, ¶ 10.] Thus, with the parties in their current positions, there is not complete diversity. Without complete diversity, this court would lack subject matter jurisdiction, and Travelers' case would have to be dismissed. Cue the Motion to Realign. [ECF No. 494.]

Travelers argue that the insurer-defendants should be realigned as plaintiffs because the primary controversy in the case is "the extent to which M.B. Kahn and Kahn Development are entitled to insurance coverage under the Travelers Policies and other policies involved in this matter with respect to . . . the Underlying Lawsuit." *Id.* at ¶ 11. They state that the interests of the Subcontractor Insurers (including the now ever-so-important Navigators) and the Developer Insurers align with Travelers, and the positions of Kahn Development, the Subcontractors, and Promenade align with M.B. Kahn. *Id.* If the Subcontractor Insurers, including Navigators, are realigned as plaintiffs and if the court ignores the alleged "nominal" parties, Travelers assert that complete diversity will exist.

It shouldn't come as a surprise to anyone—particularly after reading the prior 22 pages—that there are many oppositions to Travelers's motion. There are 11[38] oppositions and one new motion to dismiss for lack of subject matter jurisdiction.[39]

---

[38] [ECF Nos. 537 (M.B. Kahn), 542 (Gemini), 543 (Montgomery Mutual), 544 (Netherlands), 545 (Liberty Mutual), 546 (Auto-Owners), 547 (Cincinnati), 550 (Western World), 562 (Pennsylvania National), 578 (Clarendon), 579 (Westfield).]  In addition to the 11 oppositions, Zurich filed a document stating that it "takes no position and neither consents to [n]or opposes the motion." [ECF No. 581.]

[39] [ECF No. 541 (Employers Mutual).]

In its opposition, M.B. Kahn argues Travelers are attempting to manufacture jurisdiction, realignment is not appropriate, and Travelers cannot satisfy the principal purpose test for realignment. [ECF No. 537.] Gemini argues Travelers indemnity question is not ripe and therefore cannot serve as the primary issue in the case. And as to the remaining issues of duty to defend and equitable subrogation, Gemini claims its interests remain adverse to Travelers. [ECF 542.] Montgomery Mutual and Netherlands emphasize the fact that Travelers' motion "is being made to manufacture diversity rather than eliminate it." [ECF Nos. 543 at p.3, 544.]

Liberty Mutual, Auto-Owners, and Cincinnati make the same arguments as M.B. Kahn, Gemini, Montgomery Mutual and Netherlands but also argue that, if the court were to realign the parties as suggested by Travelers, it would not render the parties on opposite sides of the "v" completely diverse. [ECF No. 545 at pp.5–8, ECF No. 546, EFC No. 547.] They argue that if the court realigns the Subcontractor Insurers as plaintiffs, RSUI, a Georgia corporation, becomes a plaintiff. But Big Time and Contractors of Atlanta, two defendants that would remain defendants, are also Georgia corporations. As a result of the realignment, Georgia corporations would appear on both sides of the "v," meaning complete diversity still would not exist. Further, they assert that despite Travelers' contention to the contrary, Big Time and Contractors of Atlanta are not "nominal" parties.[40]

---

[40] Western World and Penn National join in and adopt the arguments of Gemini, Montgomery Mutual, Netherlands, and Cincinnati. [ECF Nos. 550, 562.] Westfield joins in and adopts the arguments of M.B. Kahn, Gemini, Montgomery Mutual, Netherlands, Liberty Mutual, Auto-Owners, and Cincinnati. [ECF No. 579.] Clarendon's arguments differ slightly from those of the other defendants. [ECF No. 578.] Clarendon argues it cannot be realigned as a plaintiff or named as a defendant in this action because its interests are subject to a separate lawsuit—*Big Time*. If required to proceed with this case, it will be defending the same issues in two separate lawsuits. Further, and relatedly, Clarendon argues it is not an "interested party" for declaratory judgment purposes.

Moreover, Employers Mutual Casualty Company ("Employers Mutual") filed a motion to dismiss Travelers' Complaint pursuant to Rule 12(b)(1), FRCP for lack of subject matter jurisdiction and simultaneously opposed Travelers' Motion to Realign. [ECF No. 541.] Employers Mutual relies on the lack of diversity between Travelers and Navigators as the basis for dismissal. As for the proposed realignment, Employers Mutual argues "the only common thread [] is the plaintiffs' attempt to shift [] anticipated loss to the defendants." [ECF No. 541-2 at p.2.] Much like Liberty Mutual, Auto-Owners, and Cincinnati, Employers Mutual argue realignment is not proper because "Travelers' interests are antagonistic to those of the insurer defendants," including Employers Mutual, and realignment would not solve the diversity problem. *Id.* at p.12.

Travelers reply to the oppositions and respond to Employers Mutual's motion to dismiss in one consolidated document. [ECF No. 583.] They argue that realignment to create, rather than destroy, diversity is proper and that the court must first render its realignment decision before it rules on whether there is complete diversity. *Id.* at pp.3–8. Further, they argue that their principal purpose for filing suit was to resolve the extent to which its insured, M.B. Kahn, is entitled to indemnity. *Id.* at p.9. According to Travelers, the court cannot consider the "significant issues between the insurers in this case" because those issues are only relevant to the substantial controversy test, which does not apply in the Fourth Circuit. *Id.* at pp.8–9. Travelers maintain that its disputes with the Subcontractor Insurers remain secondary to its indemnification request. *Id.* at pp.11–12.

Travelers also briefly address an argument raised primarily by Gemini—that Travelers' claims related to indemnity are not ripe, and therefore, the court cannot consider them in determining the primary issue in the case. *Id.* at pp.13–14. Travelers contend that the dispute over ripeness of their claims will need to be resolved before the court can consider the argument as one in opposition to

the Motion to Realign. *Id.* at p.14.[41]   Finally, Travelers argue that once the parties are realigned, the court must disregard the citizenship of Big Time and Contractors of Atlanta because they are "nominal parties." *Id.* at pp.15–19.[42]

## XII.   Miscellaneous Motions.

Finally, there are additional motions that do not fit neatly into the above-listed categories.  The good news is that many of the motions are easily resolved as either unopposed or moot.  These motions include:

- M.B. Kahn's motion to strike Motorist Mutual's request for attorneys' fees.  [ECF No. 410; *see also* ECF No. 319 at p.11 ("WHEREFORE" paragraph).]  Motorist Mutual does not oppose the request, if the court strikes the request without prejudice.  [ECF No. 480.]  The court hereby **GRANTS** M.B. Kahn's Motion to Strike, **ECF No. 410**, and strikes Motorist Mutual's request for attorneys' fees, ***without prejudice***.

- M.B. Kahn's motion to strike Promenade's crossclaims.  [ECF No. 475.]  Promenade responds that it was not intending to pursue any crossclaims.  [ECF No. 522.]  Accordingly, the court hereby finds that Promenade's pleading does not assert crossclaims against M.B. Kahn, and therefore, **ECF No. 475** is **MOOT**.

---

[41] While not directly at issue in the Motion to Realign, the court notes that Travelers seem to concede that their claims related to the duty to defend fail to state claim.  Travelers state that the arguments in opposition to the Motion to Realign "ignore[] the fact that South Carolina law largely forecloses an insurer from pursuing the very claim the opposing insurers suggest is the primary issue in this action."  [ECF No. 494 at p.14 (referencing *Sloan*); *see also id.* at n.5; *id.* at p.9 ("Travelers Complaint could not be clearer and certainly cannot be construed as primarily raising issues as to how coverage should be divided . . ., particularly in light of the restrictions on Travelers' ability to do just that under South Carolina law.").]

[42] M.B. Kahn also responds to Employers Mutual's Motion to Dismiss.  [ECF No. 574.]  It agrees with Employers Mutual that Travelers' Complaint should be dismissed for lack of jurisdiction, but asks the court to retain jurisdiction over its third-party claims because they have an independent jurisdictional basis.

- Kahn Development's motion to dismiss its crossclaim against Gemini, without prejudice, given identical crossclaims are pending in *Big Time*. [ECF No. 535.] Gemini consents to the relief requested. *Id.* The court hereby **GRANTS** the motion to dismiss, **ECF No. 535**.

- Three Motions to Strike Big Time's "crossclaims." [ECF No. 360 (filed by Liberty Mutual), ECF No. 362 (filed by Auto-Owners), ECF No. 389 (filed by Navigators).] It appears these three motions are unopposed. Accordingly, the court hereby **GRANTS** the three motions to strike, **ECF Nos. 360, 362, 389**, **as** *unopposed*.

The remaining motions are contested, but may be rendered moot following the court's ruling on subject matter jurisdiction. These motions include:

- Two contested motions for admission pro hac vice. [ECF Nos. 121, 122.]

- M.B. Kahn's motion to strike Admiral's attorneys' fee request. [ECF No. 265.]

- M.B. Kahn's conditional motion to sever claims. [ECF No. 593.]

- Motions to stay discovery and other deadlines pending rulings on the dispositive motions. [ECF No. 488, 489, 492, 493, 533, 549.]

The court will refrain from ruling on this second group of motions until after its analysis and ruling on the subject matter jurisdiction question.

### DISCUSSION

After that abbreviated (insert sarcasm here) outline of the procedural history of the case, the pending motions, and the arguments of the parties, the court turns to its analysis of the issues; namely, its jurisdiction.

## I. Does this Court Have Jurisdiction Over Travelers' Claims?  Diversity, Realignment, and Ripeness.

Given that this court cannot proceed with Travelers' case until it determines whether it has subject matter jurisdiction, the obvious starting point for the court's analysis is the lack of complete diversity between the parties as currently aligned.  In that regard, the court is faced with two pending motions to dismiss Travelers' Complaint and Travelers' corresponding motion to realign the parties.  [ECF Nos. 73 (M.B. Kahn's Motion to Dismiss Travelers' Complaint), 541 (Employers Mutual's Motion to Dismiss Travelers' Complaint), ECF No. 494 (Travelers' Motion to Realign).  Relatedly, as will be discussed in further detail below, the court takes up another justiciability doctrine—ripeness—in rendering its decision on the three motions.

### A.  Complete Diversity Lacking.

Federal courts are of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute."  *In re Bulldog Trucking, Inc*., 147 F.3d 347, 352 (4th Cir. 1998).  One statutory basis for federal jurisdiction, and the one at issue here, is diversity of citizenship.  28 U.S.C. § 1332; [ECF No. 1, Compl. at ¶ 55].  For this court to have jurisdiction over Travelers' action pursuant to section 1332, the matter in controversy must exceed the sum or value of $75,000, and it must be between "citizens of different states."  *Id.* at (a)(1).  A corporation is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]"  *Id.* at (c)(1).  Except for certain class actions,[43] section 1332 requires complete diversity among the parties.  Stated differently, the citizenship of every plaintiff must be different from the citizenship of every defendant.  *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 69 (1996).

---

[43] 28 U.S.C. § 1332(d).

Here, Travelers allege they are incorporated in and have their principal places of business in Connecticut. [ECF No. 1, Compl. at ¶ 19.] And while Travelers initially pleaded upon information and belief that Navigators is a New York corporation with its principal place of business in New York, *id.* at ¶ 32, they have since acknowledged (at least for purposes of their motion to realign) that Navigators[44] may have its principal place of business in Connecticut. [ECF No. 494 at p.8, ¶ 10; *see also* ECF No. 341 at ¶ 6 (Navigators's assertion that its principal place of business is in Connecticut).] If Navigators's principal place of business is in Connecticut, complete diversity is lacking.

"[A] defendant may challenge subject matter jurisdiction in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The first is a "facial challenge." *Id.* The argument is that the complaint fails to allege facts upon which subject matter jurisdiction can be based. The second is a "factual challenge." *Id.* A defendant raising a factual challenge argues that "the jurisdictional allegations of the complaint [are] not true." *Id.* (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In either case, "[t]he burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Const., Inc.*, 776 F.3d 271, 273 (4th Cir. 2015).[45] Having reviewed the parties' submissions and considered Travelers' burden to establish jurisdiction, the court is compelled to conclude that, if the parties remain aligned as set forth in

---

[44] Navigators is an insurer of one of M.B. Kahn's subcontractors, Big Time. [ECF No. 1, Compl. at ¶ 32.]

[45] The burden of a facial challenge is less onerous on the plaintiff. The plaintiff is "afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration," meaning the "allegations in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). With a factual challenge, "[t]he plaintiff . . . is afforded less procedural protection." *Id.* "The presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.*

Travelers' Complaint, complete diversity is lacking. *See McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) ("The prerequisites to the exercise of jurisdiction are specifically defined[.] . . . They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor."); *North v. Court One Corp.*, No. 2:05-cv-3483, 2006 WL 1663799, at *2 (D.S.C. June 13, 2006) ("[T]he burden of supporting the claim of jurisdiction by competent proof is upon the plaintiff."); [ECF No. 494 at pp.7–8, ¶ 9 (outlining evidence submitted to establish Navigators's principal place of business), ¶ 10, ECF No. 541-1 (article on acquisition), ECF No.73-4 (South Carolina Department of Insurance "lookup" for Navigators; outlining main administrative office information in Connecticut)].

Unless realignment is appropriate, the court must dismiss Travelers' Complaint for lack of subject matter jurisdiction.

## B. Realignment.

In what seems like a second bite of the jurisdictional apple, Travelers ask the court to correct their diversity oversight and realign the parties. Notably, Travelers filed this action asserting the existence of diversity jurisdiction. [ECF No. 1.] Only after Travelers' discovery that diversity is lacking, did the issue of realignment come before the court. Realizing their Complaint lacks complete diversity, Travelers now ask the court to find that the primary issue in this case is the extent to which M.B. Kahn and Kahn Development are entitled to insurance coverage from the insurer-defendants, realign the insurer-defendants as plaintiffs in accordance with that primary issue, and find that certain other defendants are "nominal," such that complete diversity exists.

Much of the realignment briefing focuses on the parties' divergent positions on what constitutes the "primary purpose" of this case, but the court believes it is imperative that it first explore whether it is appropriate to apply realignment principles at all. That is, is it appropriate

for Travelers to invoke realignment to correct its mistaken belief that diversity existed at the outset?

### 1. Creating v. Defeating Diversity Jurisdiction.

Realignment is not an always-available tool that can be invoked by the parties on a whim to create or destroy diversity jurisdiction when they find it most convenient. Rather, it is a tool intended to protect against manufactured jurisdiction. The Fourth Circuit Court of Appeals recently described realignment's purpose as follows: "Realignment ensures that parties do not artfully draft pleadings in order to escape 'the mandate that courts carefully confine their diversity jurisdiction to the precise limits that the jurisdictional statute, pursuant to Article III, has defined.'" *Jackson v. Home Depot U.S.A., Inc*., 880 F.3d 165, 172 (4th Cir. 2018), *aff'd*, 139 S. Ct. 1743 (2019). At its core, it "*prevents* the creation of sham diversity jurisdiction." *Id.* (emphasis added). Thus, a threshold question: is it appropriate to use realignment to create rather than destroy diversity jurisdiction?

Despite some of the defendants' contentions to the contrary, it seems the answer is "yes." A review of the case law evidences that realignment can work both ways. *See, e.g., Bi-Lo, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 0:14-cv-355, 2014 WL 12605522, at *6–*7 (D.S.C. Apr. 30, 2014) (following Eleventh Circuit Court of Appeals and concluding just as "parties themselves cannot confer diversity jurisdiction upon the federal courts by their own designation of plaintiffs and defendants," "the converse of this principle—that parties cannot avoid diversity by their designation of the parties—is also true"). To determine whether Travelers' use of realignment to create diversity is an appropriate one, the court explores how realignment is used in both contexts.

It appears that the most common use of realignment results in destroying diversity where it "inadvertently" exists.[46] By "inadvertent," the court means diversity exists simply by the fact that all parties named as defendants happen to have different citizenship from the plaintiff, but the "actual, substantial controversy" is not "between citizens of different states." *City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 69 (1941). Examples are the best way to explain this use of realignment.

The seminal case is one from the United States Supreme Court, *City of Indianapolis v. Chase National Bank of City of New York*, 314 U.S. 63 (1941). There, Chase National Bank, a trustee under a mortgage deed securing a bond issued by Indianapolis Gas, filed suit in federal court, asserting original jurisdiction based on diversity and seeking overdue interest on the bond. Indianapolis Gas, Citizens Gas, and the City of Indianapolis—all Indiana citizens—were named as defendants. At the time of filing, complete diversity existed. But the district court concluded that there was not a "collision between the interests" of Chase National Bank and Indianapolis Gas, realigned Indianapolis Gas as a plaintiff, and dismissed the case for lack of jurisdiction. The Court of Appeals reversed, and the case eventually landed before the United States Supreme Court. The question: "Does an alignment of the parties in relation to their real interests in the 'matter in controversy' satisfy the settled requirements of diversity jurisdiction?" *Id.* at 69. The answer: Yes. But how did the Court get there?

---

[46] This category would also include what the Fourth Circuit Court of Appeals described as "sham" or "manufactured" jurisdiction. *See Jackson*, 880 F.3d at 172. Just as a federal court would zealously guard against extending diversity jurisdiction to instances where it *should not* exist, *i.e.*, what this court calls "inadvertent" diversity cases, it would protect the limits of its jurisdiction by realigning to prevent a party from inappropriately creating jurisdiction where it otherwise *would not* exist, *i.e.*, "sham" or "manufactured" jurisdiction.

Background on the relationship between the parties is instructive. Prior to the lawsuit, Indianapolis Gas leased its mortgaged property to Citizens Gas, with Citizens Gas agreeing to pay the interest on the bond as rent. Thereafter, Citizens Gas conveyed its property, including the leased/mortgaged property, to the City of Indianapolis. During this time, the interest payments ceased. Chase National Bank sued seeking a declaration that the lease from Indianapolis Gas to Citizens Gas was valid and binding such that it served as part of the security for performance of the mortgage obligations. Indianapolis Gas, though named as a defendant in the case, agreed that the lease should be valid and binding. The district court realigned Indianapolis Gas as a plaintiff given that its interests on the issue were aligned with Chase National Bank. This decision destroyed diversity jurisdiction.

The Supreme Court, in reaching its decision on whether the district court's realignment was proper, looked to what is necessary to "*sustain* diversity jurisdiction." *Id.* at 69 (emphasis added). It noted that "there must exist an 'actual', 'substantial', controversy between citizens of different states, all of whom *on one side of the controversy* are citizens of different states from all parties on the other side." *Id.* (internal citations omitted; emphasis added). The Court deemed this the "necessary 'collision of interest.'" *Id.* (citation omitted). "Whether the necessary 'collision of interest' exists . . . must be ascertained from the 'principal purpose of the suit, and the 'primary and controlling matter in dispute.'" *Id.* (internal citation omitted). Because there was "no collision between the interests of the plaintiff [Chase National Bank] and the interests of Indianapolis Gas" as to the validity of the lease, realignment was proper, and complete diversity was lacking. *Id.* at 71; *see also id.* at 74 ("What Chase wants Indianapolis Gas wants and the City does not want."); *id.* ("Chase and Indianapolis Gas, are, colloquially speaking, partners in litigation.").

Again, the decision to realign stemmed from what is required to have diversity jurisdiction. It is more than simply citizens of different states on either side of the "v." *Indianapolis* requires that there be an "actual" and "substantial" controversy or "collision of interests" between those appearing on opposite sides of the "v." The Supreme Court emphasized the need for "regard [to] be had to the requirements of jurisdictional integrity," meaning those "on the same side of the controversy" should appear on the same side of the "v" for "purposes of diversity jurisdiction." *Id.* at 74. Further, it reminded lower courts of the "dominant note" from Congress "relating to diversity jurisdiction is one of jealous restriction[.]" *Id.* at 76. By placing these additional requirements on the exercise of diversity jurisdiction, the Court was in keeping with the "constitutional limitations upon the judicial power of the federal courts." *Id.* at 75.

The Fourth Circuit Court of Appeals's application of *Indianapolis* in *U.S. Fidelity and Guarantee Company v. A&S Manufacturing Company, Inc.*, 48 F.3d 131 (4th Cir. 1995) is another example of "inadvertent" diversity. There, a manufacturer was sued by the Environmental Protection Agency ("EPA") for the costs associated with its cleanup of contamination allegedly occurring at the manufacturer's sites. During the relevant period, the manufacturer had three insurance policies with three insurance companies—USF&G, Federal Insurance, and Hartford. All three refused to defend or indemnify the manufacturer in relation to EPA's suit. USF&G brought a declaratory judgment action against the manufacturer, Federal Insurance, and Hartford, asking the court to declare the "parties' rights and duties as they relate to [the manufacturer's] claims for insurance coverage for environmental liabilities." *Id.* at 132. The manufacturer also brought its own, nearly identical, declaratory judgment action in state court against the three insurance companies. The manufacturer could not pursue the action in federal court because its citizenship was the same as one of the insurance companies. In the federal action, the manufacturer

34

moved to realign the two insurer-defendants as plaintiffs, which would destroy diversity. The district court granted the motion and dismissed the action for lack of subject matter jurisdiction.

On appeal, the Fourth Circuit formally adopted the two-step "principal purpose" test for realignment. Referencing *Indianapolis*, it stated: "*Indianapolis* specifically requires the district court to ascertain the 'collision of interests' from the 'principal purpose of the suit, and the primary and controlling matter in dispute' and to 'arrange the parties according to their sides in the dispute.'" *Id.* at 133 (citing 314 U.S. at 69). Step one is the court's determination of the primary issue in the controversy. *Id.* The second is the court's alignment of the parties according to their positions on that primary issue. *Id.* In explaining the last step, the Fourth Circuit concluded: "If the alignment differs from that in the complaint, the court must determine whether complete diversity *continues to exist*." *Id.* (emphasis added). Again, *U.S. Fidelity*, much like *Indianapolis*, was asking whether diversity *jurisdiction* existed in a case where diversity of *citizenship* appeared on the face of the complaint. This distinction emphasizes the fact that just because citizens of different states appear on different sides of the "v," as is required for complete diversity, it does not mean that the court has diversity *jurisdiction* as limited by Article III and federal statute.[47]

In *U.S. Fidelity*, the Fourth Circuit emphasized some of the same desires to safeguard and limit diversity jurisdiction as the Supreme Court expressed in *Indianapolis*. In adopting the principal purpose test, the Fourth Circuit found that it "allows parties to engage a federal forum in a narrower range of situations." *Id.* "This result comports with the mandate that courts *carefully confine their diversity jurisdiction* to the precise limits that the jurisdictional statute, pursuant to Article III, has

---

[47] The Fourth Circuit recognized this distinction in its rejection of the substantial controversy test: "In many multiple party suits, some hypothetical adversity between diverse parties can be claimed as giving rise to a substantial controversy. Thus, the substantial controversy test allows diversity jurisdiction in a broad range of cases, limited only by the creative pleading of the plaintiff." *U.S. Fidelity*, 48 F.3d at 133.

defined." *Id.* (emphasis added). Because the "primary issue" in *U.S. Fidelity* was "whether the insurers owe [the manufacturer] a duty to defend against the underlying environmental lawsuits and a duty to indemnify for any liability assessed," it was appropriate to realign all insurers on one side of the "v." *Id.* at 134. As a result, diversity jurisdiction was "carefully confine[d]," and the matter was dismissed.[48]

In both *Indianapolis* and *U.S. Fidelity*, federal courts guarded against extending diversity jurisdiction even though complete diversity, in a technical sense, appeared on the faces of the complaints. This case is not a mirror image of *Indianapolis* or *U.S. Fidelity*. In those cases, the plaintiffs named all relevant parties to their disputes as defendants—appropriately so. By happenstance, complete diversity existed. What did not exist, however, was the necessary "actual" and "substantial controversy between citizens of different states, all of whom *on one side of the controversy* are citizens of different states from all parties *on the other* side." *Indianapolis*, 314 U.S. at 69 (emphasis added). Here, complete diversity does not appear on the face of Travelers' Complaint, meaning this court is not asking or answering the same questions, *i.e.*, whether the court should "sustain diversity jurisdiction," *Indianapolis*, 314 U.S. at 69, or whether "complete diversity continues to exist," *U.S. Fidelity*, 48 F.3d at 133. Rather, because complete diversity is lacking, the court is asking whether it should create it. The court turns to examining sources discussing realignment to create diversity to determine whether this distinction, while real, is a substantive one.

At least one well-known treatise has concluded that realignment creating diversity occurs less often than realignment defeating diversity. *See* 20 Charles Alan Wright and Mary Kay Kane,

---

[48] Logically so. It goes without saying that if the insured lacks diversity jurisdiction in his action pending against the insurance companies in state court, the same action filed by an insurance company should similarly lack diversity jurisdiction.

*Federal Practice and Procedure* § 32 (2d ed. Apr. 2019) ("Usually the realignment of parties, when required, will have the effect of defeating jurisdiction."). But does the fact that it occurs less often mean that it should not occur here?

The same treatise discusses two situations in which realignment may create diversity. The first is "in a *removed* action in which the removing party asks for realignment to justify the removal[.]" *Id.* at n.4 (emphasis added); *see also, e.g., Gressette v. Sunset Grille, Inc*., 447 F. Supp. 2d 533, 535–37 (D.S.C. 2006) (denying motion to remand after realigning defendant as plaintiff where it was "clear that no primary issue in controversy exists between" the realigned defendant and the plaintiff); *Beaufort Rentals LLC v. Westchester Fire Ins. Co*., No. 9:18-cv-2658, 2018 WL 6248770, at *2 (D.S.C. Nov. 29, 2018) ("When it is appropriate, a court may realign parties *after removal* to create diversity jurisdiction.") (emphasis added). This is the reverse of *Indianapolis* and *U.S. Fidelity*. The plaintiff brings his case, names those with an interest in the dispute as defendants, and diversity does not exist, either because of happenstance or the plaintiff's naming of a "sham" defendant to defeat diversity. In those instances, courts apply the principal purpose test to determine whether the plaintiff's position and the defendants' position on the primary issue are aligned or opposed. If they are aligned, the court can realign the defendant as a plaintiff and create complete diversity.[49]

---

[49] To the extent it is not clear above, the court points out that diversity in the jurisdictional sense either exists or not based on the "primary issue" in dispute. This is not something the court is creating or destroying. Rather, the court is creating or destroying the completeness of diversity of citizenship—placing the party on its side of the dispute or "v." Using the language from *Indianapolis*, "an actual, substantial controversy between citizens of different states" either exists or not depending on the citizens' "sides in the dispute," not on how the citizens are arranged in the pleadings. 314 U.S. at 69. When the court acts pursuant to the principal purpose test, it does not change the party's position as it relates to the dispute, it merely changes their position in terms of the "v," such that completeness of diversity is created or destroyed.

The second is "[w]hen a party who should join as plaintiff refuses to do so." 20 Charles Alan Wright and Mary Kay Kane, *Federal Practice and Procedure* § 32, n.4 (2d ed. Apr. 2019). In that instance, the party "may be named as [a] defendant" pursuant to Rule 19(a), FRCP[50] and thereafter "realigned as a plaintiff for jurisdictional purposes." *Id.*

If a party invokes realignment to create diversity in one of these two ways, it is not problematic. Unfortunately, this does not ease the court's analysis. Travelers' request for realignment does not fit neatly into these categories either. Working in reverse order, this is not a situation in which Travelers uses Rule 19, FRCP to join an involuntary plaintiff. When Travelers filed the Complaint, they made it clear that they were naming all of the Subcontractor Insurers as defendants. They asserted claims against each and every defendant in the action—all 35 of them. The Rule 19, FRCP scenario, therefore, does not justify Travelers' request.

Turning back then to the first scenario, the distinction is obvious: Travelers did not remove this case. This is not a situation in which a plaintiff sued all others it believed to be part of or necessary to the dispute, a defendant recognizes that another defendant is aligned in interest with the plaintiff, and then the defendant removes the case asking the court to correct the positioning of the interest-aligned defendant. This court is presented with the following:

- Plaintiffs file suit, alleging there is a real controversy and complete diversity of citizenship.

- None of the almost 40 original parties to the dispute suggest that the parties are not appropriately aligned, including Plaintiffs.

- A defendant challenges complete diversity of citizenship.

---

[50] Rule 19, FRCP governs required joinder of parties. Section (a)(2) provides: "If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff." Fed. R. Civ. P. 19(a)(2).

- Plaintiffs respond, but do not argue that the parties need to be realigned.

- Alleged non-diverse defendant appears and confirms its citizenship is the same as that of Plaintiffs.

- Realizing complete diversity is lacking, Plaintiffs come to the court and essentially say, "we got it wrong the first time, but don't worry. You can just realign the parties and create complete diversity of citizenship."

The court is left with only one thought: How isn't this an attempt to manufacture jurisdiction?

Travelers asks the court to ignore the fact that the lack of complete diversity in the first instance was their "mistake"—one that would have required them to file in state court in the first instance—and then use realignment to correct that "mistake." Essentially, apply *U.S. Fidelity* and *Indianapolis*, but ignore how we got here. So, the question remains: Will the court find that Travelers can invoke realignment to correct its erroneous allegation that complete diversity exists?

Travelers fail to point to any cases with truly analogous facts or procedural histories, and the court's independent review similarly revealed none. And perhaps that is telling in and of itself. On the one hand, Travelers filed this action staking its position that it had a real controversy with all defendants. It seems odd to now allow Travelers to move parties around simply to create complete diversity. It also seems to be at odds with the Supreme Court's and Fourth Circuit's recognition that diversity jurisdiction is "one of jealous restriction." *Indianapolis*, 314 at 76. On the other hand, the court is acutely aware from reading the foregoing cases that "jurisdiction cannot be conferred upon[51] the federal courts by the parties' own determination of who are plaintiffs and who are defendants." *Id.* at 69. Instead, it is the court's duty to "look beyond the pleadings and

---

[51] Again, the use of "conferred upon" indicates a suggestion that the Supreme Court placed some weight on the fact that complete diversity existed in the first instance in *Indianapolis*. 314 U.S. at 69.

arrange the parties according to their sides of the dispute." *Id.*; *see also Heniford v. Am. Motors Sales Corp.*, 471 F. Supp. 328, 334 (D.S.C. 1979) (assessing removal, "the court will realign the parties according to their true interest, as it would were the case brought in the federal court originally."). This is quite a quandary.

Suffice it to say, the court remains unconvinced that realignment principles should apply to this case. Balancing the arguments presented and comparing them to the applicable law, this feels more like Travelers' last move in a "game of chess." *Indianapolis*, 314 U.S. at 69 ("Litigation is the pursuit of practical ends, not a game of chess."). Or, harkening back to the Fourth Circuit's explanation in *Jackson*, it seems more analogous to an attempt to create "sham diversity jurisdiction." 880 F.3d at 172; *see also id.* (describing a party's "rush to claim applicability of the principal purpose test"). If this court were to use realignment to create sham diversity jurisdiction, it would run directly afoul of the Fourth Circuit's stated purpose of the doctrine. But this court's prior rulings in insurance declaratory judgment cases, give it sufficient pause. *See, e.g., Fenwick Commons Homeowners Ass'n, Inc. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, No. 2:19-cv-57, 2019 WL 1760150, at *3 (D.S.C. Apr. 22, 2019) ("In a declaratory judgment action involving an insurance company's policy coverage, the parties' interests are generally aligned based on whether they believe there is coverage of the damages that might underlie the claims for insurance."). As a result, this court is going to give Travelers another "move."

## 2.  **Principal Purpose Test Applied.**

Assuming Travelers' motion is not "an attempt to artificially manufacture jurisdiction" using realignment, the court turns to the principal purpose test. *Jackson*, 880 F.3d at 172. The principal purpose test has two steps. First, the court determines the "primary issue in the controversy." *U.S.*

*Fidelity*, 48 F.3d at 133. Second, the court "align[s] the parties according to their positions with respect to the primary issue." *Id.*

Travelers assert that the "primary controversy in this lawsuit" is the same "[a]s in *U.S. Fidelity*." [ECF No. 494 at p.12.] It is "whether and to what extent each of the insurers is obligated to defend or indemnify M.B. Kahn and/or Kahn Development in the Underlying Lawsuit." *Id.*; *see also id.* at p.8, ¶ 11 (describing the primary issue as "the extent to which M.B. Kahn and Kahn Development are entitled to insurance coverage under the Travelers' Policies and other policies in this matter with respect to the claims asserted against M.B. Kahn and Kahn Development in the Underlying Lawsuit"). Travelers contend that "any disputes amongst the insurers regarding contribution, priority, and equitable subrogation are ancillary or secondary to such primary coverage issues." *Id.* at p.12; *see also id.* at p.5, ¶ 5.

The defendants opposing Travelers' motion disagree. M.B. Kahn argues, and the court agrees,[52] that there "is no single 'primary issue' in the sense that resolution [] would resolve all disputes between the parties." [ECF No. 537 at p.9.] It contends that to the extent an issue

---

[52] This point by M.B. Kahn exemplifies why the proposed realignment does not fit into the *U.S. Fidelity*-mold. In *U.S. Fidelity*, there were three insurers insuring the same insured. All three declined to defend and indemnify. The dispute was over whether one or more of the insurers were obligated to defend and indemnify the manufacturer/insured. While the court recognized that there may be "disputes . . . among the insurers regarding contribution," those disputes were "ancillary to the primary issue of the duty to indemnify" because the court "would first have to decide whether the insurers were under any obligation to defend and indemnify[.]" 48 F.3d at 134. The Fourth Circuit's conclusion was a practical one. If none of the insurers are obligated to defend and indemnify, there is no dispute between the insurers. Similarly, if one insurer is found responsible for defense and indemnification, contribution is, again, a moot issue. *See id.* ("If none, or only one, provided coverage, the question of the insurers' liability to each other would be moot."). "Only if two or more are liable [], would the court have to allocate liability and costs." *Id.* But here, Travelers' dispute with the Subcontractor Insurers over division of defense costs is not contingent in the same way. Travelers has paid certain defense costs, and it now seeks to recover them from the Subcontractor Insurers.

predominates, it is "*which insurers* must provide coverage, and how that coverage should be divided and/or shared among the insurers." *Id.* at pp.9–10.

Gemini takes a different approach. It argues that the "indemnity issue is not ripe for adjudication" and, therefore, it "cannot be the primary issue in the action. [ECF No. 542 at p.3.] Further, it asserts that this case differs from those cases that align insurers v. insureds in declaratory judgment cases "because the primary issue is defense obligations." *Id.* at p.4. Montgomery Mutual agrees with Gemini. [ECF No. 543.]

Employers Mutual and Cincinnati argue that the court must focus on Travelers' principal purpose for filing suit, which it contends is "risk transfer," "shifting its coverage obligations to the Subcontractor Insurers." [ECF No. 585 (relying on *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008) (focusing on Plaintiffs "principal purpose in filing suit")), ECF No. 547.] Netherlands makes a similar argument, distinguishing *U.S. Fidelity* and arguing that "Plaintiff filed this lawsuit to secure this Court's declaration that the Subcontractor Insurers' duties of defense and indemnity to M.B. Kahn are 'primary and non-contributory' in comparison to those of Plaintiffs." [ECF No. 544 at p.2.] Liberty Mutual and Auto Owners have similar positions. They focus on the fact that the Travelers' stated primary purpose "fails to acknowledge . . . that [it] includes an effort by [Travelers] to bind the Subcontractor Insurers to any rulings as they relate to Travelers' policies." [ECF No. 546 at p.3, ECF No. 545.][53]

At first glance, Travelers' position seems persuasive. In *U.S. Fidelity*, the Fourth Circuit affirmed the district court's decision to realign the insurers together as plaintiffs based on their shared "primary goal of avoiding obligations to [the manufacturer/insured]." 48 F.3d at 134; *see*

---

[53] Western World, Penn National, and Westfield incorporate the briefing of other Subcontractor Insurers. [ECF Nos. 550, 562, 579.] Clarendon relies on its status as a party in the *Big Time* action to oppose the Motion to Realign. [ECF No. 578.]

*also id.* ("The district court found that the primary issue in the case was whether the insurers owe [the manufacturer/insured] a duty to defend against the underlying environmental lawsuits and a duty to indemnify for any liability assessed[.]").   Here, just as Travelers want to avoid indemnifying M.B. Kahn, the Subcontractor Insurers share the same goal.   But the court is also persuaded by the distinctions between this case and U.S. Fidelity; namely, Travelers efforts to reach the Subcontractor Insurers.

If this case involved only M.B. Kahn's direct insurers—Travelers, Zurich, etc.—the court may be more inclined to conclude that the primary issue stated in *U.S. Fidelity* is the same primary issue here.   Nevertheless, the fact remains that not only is Travelers seeking to avoid indemnification to M.B. Kahn (an issue that they go so far as to tacitly acknowledge is not ripe), it is also asking the court to bind the Subcontractor Insurers (and others) to that declaration and recover the costs they have expended on M.B. Kahn's defense.   Moreover, unlike *U.S. Fidelity*, Travelers is not seeking a declaration regarding its duty to defend M.B. Kahn.   M.B. Kahn received a defense from Travelers and is currently receiving a defense from several other insurers.   Thus, because of the affirmative claims asserted against the Subcontractor Insurers and the lack of a request for a declaration regarding the duty to defend, this is not a straightforward application of *U.S. Fidelity*.

Looking beyond *U.S. Fidelity*, the court is persuaded by Gemini's argument that the unripe duty to indemnify claim may not serve as the primary issue in the case.   Ripeness, or the lack thereof, is an issue that permeates this case.   More than half of the motions pending before the court raise the concept in one way or another.   All parties agree that the Underlying Case remains unresolved.   And without a finding of liability against one or more of the contractor-entities, the claims seeking a declaration regarding indemnification simply are not ripe.   Looking to Travelers'

pending claims then, the only dispute this court can decide now is the one related to defense obligations. That issue, and that issue alone, must be the primary issue.

This is not a new concept. Other courts have applied the principal purpose test and refused to realign where the only ripe issue before the court is one related to the duty to defend. *See, e.g., Stallings & Sons, Inc. v. EMC Property & Cas. Co*., No. 2:19-cv-392, 2020 WL 1540395 (M.D. Ala. Mar. 31, 2020) (refusing to realign after removal where "the duty to indemnify is not ripe" and "[t]he only issue is the duty, if any, of the insuring Defendants to defend . . . in the underlying action"). This is, however, new territory in terms of Fourth Circuit case law or a decision from a court in this District. Thus, while the court is persuaded that there are sufficient material distinctions between this case and U.S. Fidelity, for example, to reject aligning all insurers on one side of the "v" and all insureds on the other, Travelers get another "move."

### 3. Nominal Party Analysis.

If the court assumes Travelers are correct that they may use realignment principles here, assumes Travelers are correct that the primary issue here is the same as in *U.S. Fidelity*, and it realigns the parties in the manner requested by Travelers, complete diversity remains lacking. Let's say that one more time: Complete diversity is *lacking*. Surely, Travelers is not asking this court to forgive its mistake in filing the action in federal court without jurisdiction, to move everyone around many months after the case was filed, and then telling the court that it still lacks complete diversity, right? Wrong.

In a footnote at the end of their motion, Travelers concede that once the insurers are realigned as plaintiffs, a Subcontractor Insurer (RSUI) and two Subcontractors (Big Time and Contractors of Atlanta), all Georgia corporations, will appear on opposite sides of the "v." [ECF No. 494 at p.14, n.8.] An all-too-familiar refrain from Travelers follows: "Court, you can disregard the lack

44

of diversity, Big Time and Contractors of Atlanta are nominal parties." Travelers argue that because RSUI issued policies to Heritage Roofing, not Big Time or Contractors of Atlanta, "there is no controversy or opposition of interest" between them "for purposes of assessing diversity jurisdiction." *Id.* Now, the court must decide whether Big Time, Contractors of Atlanta, or both are nominal parties such that their citizenship can be disregarded for jurisdictional purposes.

As established by the Supreme Court, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980); *see also Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260–61 (4th Cir. 2013) (assessing consent to removal requirement and concluding inquiry is whether the non-removing party has an interest in the outcome of the case).[54] Typically, the issue of nominal-party status appears alongside removal.

In the consent-to-removal context, the Fourth Circuit has held that "[n]ominal means simply a party having no immediately apparent stake in the litigation either prior or subsequent to the act of removal." *Hartford*, 736 F.3d at 260; *see also Johnson v. Time Warner Ent.-Advance/Newhouse P'ship*, No. 3:15-cv-1727, 2015 WL 13790673, at *3 n.5 (D.S.C. June 23, 2015) ("[I]t looks to the risk of future injury flowing from the complaint as it existed at the time of removal."). The "key inquiry" for the court is "whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way." *Hartford*, 736 F.3d at 260. If the party's "absence from the proceeding would render a final judgment unfair to one or more of the parties,"

---

[54] Much like the realignment question generally, the nominal party rule is often referenced as one intended to prevent a party from avoiding or defeating diversity jurisdiction. "[A] party cannot *defeat* federal diversity jurisdiction by joining a party which has no real stake in the outcome of the case." *Beaufort Cty. School Dist. v. United Nat'l Ins. Co.*, 519 F. Supp. 2d 609, 615 (D.S.C. 2007). In this case, Travelers named all defendants as real parties in interest. It was not until they realized complete diversity did not exist that they switched gears to argue that specific Subcontractors are nominal parties.

the party is not nominal. *Id.* at 261 (citation omitted). The analysis requires the court to examine "the particular facts and circumstances" of the case and decide "whether the non-removing party has an interest in the outcome" *Id.*

District courts in the Fourth Circuit have identified four factors to aid in the nominal party determination: (1) the level of control that party retains over the litigation; (2) the weightiness of the party's interest in the litigation; (3) whether the party has retained counsel; and (4) whether the party has given a statement or a deposition. *See, e.g., Henzler v. S.C. Farm Bureau Mut. Ins. Co.*, No. 5:13-cv-3542, 2014 WL 3889106, at *3 (D.S.C. Aug. 8, 2014) (applying factors); *Del Webb Comms., Inc. v. Am. Home Assurance Co.*, No. 9:16-cv-1209, 2016 WL 5407894, at *3 (D.S.C. Sept. 28, 2016). "[C]ourts have found that a party's lack of financial risk in the litigation weighs heaviest in favor of finding that party is a nominal party." *Hill v. Kinloch*, No. 2:15-cv-864, 2015 WL 1943771, at *3 (D.S.C. Apr. 29, 2015) (applying *Owens* factors).

Applying the four factors and considering the particular facts and circumstances of this case, the court concludes that Big Time is not a nominal party to Travelers' case.[55] Presumably, Big Time retains control over the litigation. It has answered Travelers' Complaint, *see* ECF No. 85, and responded to Zurich's crossclaims, *see* ECF No. 271. It has retained counsel; the same counsel representing it in its own suit pending before this court. It has not given a "statement" or deposition, but this matter is in its early stages. And, as to the "weightiness" of its interest in the litigation, the adjudication of Travelers' claims could result in a finding that M.B. Kahn is not an additional insured on the policies issued to it, such that it could be subject to additional claims by

---

[55] The court declines to reach whether Contractors of Atlanta is a nominal party. It need not, given that the court's finding as to Big Time defeats diversity.

M.B. Kahn. Therefore, it has a sufficiently weighty interest in the litigation to render it more than a mere nominal party.

Travelers concede that many of the factors weigh in favor of a finding that Big Time is not a nominal party, but they reply that Big Time's interest will be adjudicated in its own pending lawsuit. [ECF No. 583 at pp.17–18 ("Since Big Time is already litigating . . . whether and to what extent there is coverage under its policies . . . , Big Time's interest in this case is limited and not sufficient to make it more than a nominal party for purposes of assessing diversity jurisdiction.".] This argument is unavailing. Where Big Time's interests will ultimately be adjudicated—in this lawsuit or its own—does not dictate whether Big Time is a nominal party for purposes of the jurisdictional analysis. If anything, this argument supports why Big Time is *not* a nominal party to this suit. Big Time must appear and protect its interest from being adjudicated here in a manner that is contrary to its position in its own pending lawsuit. For that reason, Big Time has an interest in the outcome of this case. *See Germond v. Maksin Mgmt. Corp.*, No. 4:14-cv-2099, 2014 WL 12774953, at *5 (D.S.C. Oct. 15, 2014) (finding Plaintiff's theory of liability sufficient to give the defendant "an interest in the outcome of the case").

In the end, this is where we land.[56] The court remains unconvinced that Travelers can use realignment in the manner it seeks here, remains unconvinced that the primary issue in this case is

---

[56] Briefly, the court believes its analysis and conclusion is consistent with both 28 U.S.C. § 1653 and Rule 15, FRCP (governing amendments to pleadings). "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," 28 U.S.C. § 1653, but the "statute does not 'empower federal courts to amend a complaint *so as to produce jurisdiction* where none actually existed before.'" *Multicultural Radio Broadcasting, Inc. v. Korean Radio Broadcasting, Inc.*, No. 15-cv-1961, 2017 WL 436250, at *4 (D.N.J. Jan. 21, 2017) (citing *Newman-Green, Inc. v. Alfonzo Larrain*, 490 U.S. 826, 831 (1989)) (emphasis added). Together, section 1653 and Rule 15 provide that if a plaintiff omits or incorrectly states allegations supporting his assertion of subject matter jurisdiction, he may be permitted to amend the pleading to demonstrate that such jurisdiction exists. Such rules do not, however, permit a plaintiff to cure a lack of subject matter jurisdiction—what Travelers attempted to do here. *See id.* at *5 (recognizing that courts have

one of indemnification and, at last, concludes that even if Travelers succeeds on those two points, complete diversity remains lacking because Big Time is not a nominal party to this case. The court is no grandmaster of chess, but with this conclusion, it assumes Travelers must lay down its king.

This court lacks subject matter jurisdiction over Travelers' Complaint due to lack of complete diversity between the parties, and the court declines to realign the parties. For the foregoing reasons, Travelers' Motion to Realign, **ECF No. 494**, is **DENIED**, M.B. Kahn's Motion to Dismiss Travelers' Complaint, **ECF No. 73**, is **GRANTED in part**,[57] and Employers Mutual's Motion to Dismiss, **ECF No. 541**, is **GRANTED**. *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case."). As a result of this holding, the court will not reach the substantive arguments for dismissal of Travelers' Complaint, and the following motions are hereby deemed **MOOT**: ECF Nos. 97, 126, 128, 142, 154, 159, 163, 165, 197, 218, 242, 247, 287, 452, and **514**.

## II.  What remains? Jurisdiction Over Counterclaims, Crossclaims, and Third-Party Claims.

The dismissal of Travelers' Complaint for lack of subject matter jurisdiction does not alone end this case. Many other parties have pending claims. M.B. Kahn has its counterclaims against Travelers, crossclaims against the Subcontractor Insurers, and third-party claims. [ECF No. 83.] Kahn Development has its own counterclaims against Travelers and crossclaims against the Subcontractor Insurers. [ECF No. 419.] And Hartford and Zurich have their crossclaims and counterclaims that mirror those of Travelers in the original complaint. [ECF Nos. 231, 256.] There

---

"generally held that 'if there is no federal jurisdiction at the outset, 'it may not be created by amendment") (citation omitted).

[57] Given the finding that it lacks subject matter jurisdiction, the court declines to address M.B. Kahn's other stated bases for dismissal of Travelers' Complaint.

are also numerous dispositive motions attacking the remaining claims. Before this court considers the substance of the remaining dispositive motions, it must address whether it can, and should, proceed with the merits of the counterclaims, crossclaims, and third-party claims in light of its decision to dismiss Travelers' Complaint for lack of subject matter jurisdiction. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 572 (1977) (recognizing federal court's obligation to satisfy itself that jurisdiction exists).

M.B. Kahn is the only party to touch on this issue. In its Conditional Motion to Sever Third-Party Claims, M.B. Kahn recognizes that "[i]n the event the court dismisses Plaintiffs' Complaint, the court will have to decide what to do with M.B. Kahn's claims." [ECF No. 593 at p.3, ¶ 2.][58] M.B. Kahn contends that the court should proceed with its third-party claims against American Guarantee, BB&T, Admiral, and Crescent South, as well as its crossclaim against AAIC, because there is an independent jurisdictional basis for the claims—diversity. *Id.* at ¶ 4. M.B. Kahn asks the court to sever the abovementioned third-party claims and crossclaims and find they "survive any dismissal of the Plaintiffs' Complaint." *Id.* at ¶ 5. Interestingly, however, M.B. Kahn does not make this argument with respect to its counterclaims against Travelers or its crossclaims against the other Subcontractor Insurers. In any event, the court agrees that it must decide whether it has jurisdiction over the remaining claims before it can proceed with assessing the remaining dispositive motions.

**A. M.B. Kahn's Counterclaims, Crossclaims, Third-Party Claims, and Motion to Sever.**

Because M.B. Kahn filed a motion touching upon this next issue, the court will address jurisdiction over its counterclaims, crossclaims, and third-party claims first.

---

[58] The motion is captioned as one to sever. But with one exception, which the court addresses below, it simply asks the court to address the very issue currently before it: what additional claims, if any, survive the dismissal of the complaint?

### 1. Counterclaims Against Travelers.

M.B. Kahn has three pending counterclaims against Travelers:  declaratory judgment, breach of contract, and bad faith.  [ECF No. 83 at ¶¶ 122–206.]  In accordance with Rule 8, FRCP,[59] M.B. Kahn's pleading alleges that there is complete diversity between it and Travelers with respect to the counterclaim and that the amount in controversy exceeds $75,000.  *Id.* at ¶¶ 122–129.  However, in filing the claims, M.B. Kahn reserved "its rights under the Motion to Dismiss previously filed and served."  *Id.* at p.27, n.1.  M.B. Kahn's position was clear: It filed the counterclaims because they were "compulsory [in] nature."  *Id.*  Following the dismissal of Travelers' Complaint for lack of subject matter jurisdiction, the court must decide whether it has jurisdiction over M.B. Kahn's counterclaims.  If it does, the court must also decide whether it must proceed with exercising jurisdiction.

At the outset, the court notes that if Travelers' case was properly before the court on diversity jurisdiction, M.B. Kahn would not need an independent jurisdictional basis to assert and proceed with its compulsory counterclaims.[60]  When a court has jurisdiction over the original action, it is generally considered to have supplemental jurisdiction over compulsory counterclaims.  *Baker v. Gold Seal Liquors, Inc*., 417 U.S. 467, n.1 (1974) ("If a counterclaim is compulsory, the federal court will have ancillary jurisdiction over it[.]");  *Sue & Sam Mfg. Co. v. B-L-S Const. Co*., 538 F.2d 1048, 1051 (4th Cir. 1976) ("The jurisdiction of the court as to a compulsory counterclaim is

---

[59] Rule 8(a)(1), FRCP requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the grounds for the court's jurisdiction, *unless* the court already has jurisdiction and the claim needs no new jurisdictional support." (emphasis added).

[60] That is not the case with permissive counterclaims.  "[A] permissive counterclaim *must* have an independent jurisdictional base[.]"  *Sue & Sam Mfg. Co. v. B-L-S Const. Co*., 538 F.2d 1048, 1051 (4th Cir. 1976) (emphasis added); *Williams v. Long*, 558 F. Supp. 2d 601, 603 (D. Md. 2008) ("[A] permissive counterclaim that lacks its own independent jurisdictional basis is not within the jurisdiction of the court.").

ancillary jurisdiction."); Fed. R. Civ. P. 13(a) defining compulsory counterclaims as those that "arise[] out of the same transaction or occurrence" as the plaintiff's claim); 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts will have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III"); *Williams v. Long*, 558 F. Supp. 2d 601, 603 (D. Md. 2008) ("[W]here neither diversity nor federal question jurisdiction exists over defendant's counterclaims, the counterclaims' status as 'compulsory' or 'permissive' determines whether the court has jurisdiction over them."). This is a logical result. Of course, if the court has diversity jurisdiction over the original claims, it should not need an independent jurisdictional basis to hear the claims that the defendant is compelled to assert in response to the complaint or risk waiving. [61]

Yet, a different question exists where the court does not have subject matter jurisdiction over the original claim. In that case, what happens to the compulsory counterclaims once the court dismisses the original action for lack of jurisdiction?

The "usual rule [is] that a district court *may* exercise jurisdiction . . . after the original claim has been dismissed for lack of jurisdiction *if* the counterclaim has an independent jurisdictional basis." *Columbia Gas Transmission Corp. v. Drain*, 191 F.3d 552, 559 (4th Cir. 1999) (emphasis added). As evident from the use of the terms "may" and "if," it is both a discretionary and conditional rule. *See, e.g., Constantin Land Trust v. Epic Diving and Marine Servs., LLC*, No. 12-cv-259, 2013 WL 1292275, at *17 (E.D. La. Mar. 28, 2013) ("This court is not required to retain

---

[61] Rule 13(a), FRCP requires a party to assert as a counterclaim "any claim . . . against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."

jurisdiction over the maritime tort counterclaim when it remanded the main claim . . . to state court.").    If an independent jurisdictional basis, such as diversity, exists to support the counterclaim, the court *may* exercise jurisdiction and proceed with the counterclaim.  If, however, "the court determines there is no basis for federal jurisdiction over plaintiff's original claim," and the "compulsory counterclaim *does not have* an independent jurisdictional basis," the court "*cannot* proceed to adjudicate" the claim.  6 Arthur R. Miller, Mary Kay Kayne, & Benjamin Spencer, *Federal Practice and Procedure* § 1414 (3d ed. Oct. 2020) (emphasis added).

Here, M.B. Kahn's pleading alleges an independent jurisdictional basis for the claims it asserts against Travelers—diversity.  Therefore, this is not a situation where the court *cannot* proceed to adjudicate the compulsory counterclaims.  Instead, this is the "may" situation.  The court must decide whether it will exercise its jurisdiction.

As noted above, M.B. Kahn's only statement on this point, the Conditional Motion to Sever, does not ask the court to exercise jurisdiction over the counterclaims.  Whether M.B. Kahn's failure to include this request in its motion is an oversight or a conscious omission is of no matter.  The court finds the Fourth Circuit Court of Appeals's analysis in *Columbia Gas Transmission Corp. v. Drain*, 191 F.3d 552 (4th Cir. 1999) instructive.  It must decline to exercise jurisdiction over M.B. Kahn's counterclaims in this case.

In *Drain*, the plaintiff filed a suit in federal court based on federal question jurisdiction.  In response, the defendant filed a motion to dismiss for lack of subject matter jurisdiction and an answer with a compulsory counterclaim.  The district court denied defendant's motion to dismiss, allowed the case to proceed, and entered judgment in favor of the plaintiff.  On appeal, the Fourth Circuit concluded that the district court lacked subject matter jurisdiction over plaintiff's claims, reversed the district court's judgment and, despite an independent jurisdictional basis for

defendant's counterclaims, directed the district court to dismiss the counterclaims without prejudice.

In reaching its decision, the Fourth Circuit acknowledge the usual rule, but also noted a distinction that is equally applicable here. It stated:

> [W]e are *not aware of <u>any</u> case* in which the district court retained jurisdiction over such a compulsory counterclaim where the plaintiffs in counterclaim [*i.e.*, the defendants] *have disputed the jurisdiction of the federal forum all along the way*, and where the merits of the counterclaim are inextricably intertwined with the merits of a federal defense to the plaintiff's non-federal claim.

*Drain*, 191 F.3d at 559 (emphasis added; internal citations omitted). Even though the case before the court is one brought pursuant to diversity jurisdiction, the practical reasoning employed by the Fourth Circuit in directing dismissal of the counterclaims is analogous here.

M.B. Kahn filed a motion "disput[ing] the jurisdiction of the federal forum" at the outset. *Drain*, 191 F.3d at 559; [ECF No. 73.] Additionally, in filing its counterclaims, M.B. Kahn was clear that it was filing them only because they were compulsory. [ECF No. 83 at p.27 n.1.] M.B. Kahn's allegations against Travelers serve "both as a defense to [Travelers'] complaint and as the basis for" the compulsory counterclaims. *Drain*, 191 F.3d at 559. In the pleading, M.B. Kahn refers to Travelers' filing of this lawsuit "on the eve of trial and at the start of mediation when it knew or should have known that such filing would disrupt trial preparations and ongoing settlement discussions." [ECF No. 83 at ¶ 201(k).] Thus, just as in *Drain*, "[i]t is clear from the procedural record in this case that" M.B. Kahn, "did not seek to avail [itself] of a federal forum but has instead contested the district court's jurisdiction over this matter each step of the way." 191 F.3d at 559.

As succinctly stated in *Drain*, "[t]o force [M.B. Kahn], by virtue of counterclaims that the federal rules of procedure compelled [it] to bring or risk forfeiting, to remain in federal court after

the original complaint has been dismissed for want of jurisdiction would be to subvert the very notions of judicial economy and fairness to litigants that underlie this rule of procedure." *Id.* Therefore, even though M.B. Kahn alleges an independent jurisdictional basis for the counterclaims in its pleading, this court, applying traditional notions of judicial economy and fairness to litigants, must decline to exercise jurisdiction.

### 2. Crossclaims Against Zurich, Subcontractors, and Subcontractor Insurers.[62]

The same jurisdictional question exists in relation to M.B. Kahn's crossclaims. As a reminder, M.B. Kahn asserts crossclaims against Zurich for declaratory judgment (defense and indemnity), reformation (mutual and unilateral mistake), breach of contract, bad faith/breach of the covenant of good faith and fair dealing, negligent misrepresentation, and fraud/constructive fraud. [ECF No. 83 at ¶¶ 257–303.] As to the Subcontractor Insurers, M.B, Kahn asserts crossclaims[63] for declaratory judgment (coverage), breach of contract, and bad faith/breach of the covenant of good faith and fair dealing. *Id.* at ¶¶ 357–380. And, finally, it seeks a declaration binding the Subcontractors (and third-party, Cayce Company) to the declarations it seeks. *Id.* at ¶¶ 382–385. Just as the court needed to examine whether it had jurisdiction to proceed with M.B. Kahn's compulsory counterclaims, the court must determine whether it has jurisdiction over M.B. Kahn's crossclaims, despite dismissal of the original action.

Crossclaims, like counterclaims, are governed by Rule 13, FRCP. Subsection (g) allows a party to "state as a crossclaim any claim . . . against a coparty if the claim arises out of the same

---

[62] The court excludes AAIC from this discussion and addresses the crossclaim against it in conjunction with its analysis of M.B. Kahn's third-party claims and Conditional Motion to Sever. *See* section II(A)(3), *infra*.

[63] M.B. Kahn includes Travelers as the insurer of Cayce Company as part of its crossclaims. The court, accordingly, considers this claim against Travelers as part of the crossclaim jurisdictional analysis.

transaction or occurrence that is the subject matter of the original action or of a counter-claim." Fed. R. Civ. P. 13(g). Because a crossclaim must "arise out of the same transaction or occurrence" as the original action or a counterclaim, it often falls within the ancillary jurisdiction of the court and an independent jurisdictional ground is not necessary. *See* 6 Arthur R. Miller, Mary Kay Kayne, & Benjamin Spencer, *Federal Practice and Procedure* § 1433 (3d ed. Oct. 2020); *Sayer Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*, 150 F. Supp. 2d 907, 917 (S.D. W. Va. 2001) ("When the Rule 13(g) test is met, 'the cross-claim may be brought under the court's supplemental subject matter jurisdiction.") (citation omitted). But where the court lacks jurisdiction over the original action, crossclaims cannot stand unless they "carry [] 'an independent basis for subject matter jurisdiction.'" *Auto-Owners Ins. Co. v. Bolden*, No. 9:16-cv-2961, 2017 WL 3923356, at *6 n.7 (D.S.C. Sept. 7, 2017) (citing *Banner Life Ins. Co. v. Bonney*, No. 2:11-cv-198, 2011 WL 6002609, at *3 (E.D. Va. Nov. 29, 2011)); Miller, Kayne, & Spencer, *supra*, § 1433 ("As in the case of a compulsory counterclaim, the dismissal of the original suit or of a counterclaim therein for lack of subject matter jurisdiction will require the court also to dismiss the crossclaim, unless that claim is supported by an independent basis of federal jurisdiction.").

In the crossclaim portion of the pleading, M.B. Kahn alleges "[o]n information and belief" that "this court has subject-matter jurisdiction over the dispute between M.B. Kahn and the Subcontractor Insurers pursuant to 28 U.S.C. § 1332." [ECF No. 83 at ¶ 345.] That may be true. Diversity may exist between M.B. Kahn and the Subcontractor Insurers. The problem, however, is that M.B. Kahn also asserts a crossclaim against the Subcontractors. Thus, the court must consider the crossclaims against the Subcontractors in assessing independent jurisdiction.

More specifically, case law suggests that the court should treat M.B. Kahn's crossclaims together, as if they were the original complaint, for purposes of determining whether there is an

independent jurisdictional basis for the claims. *See Nat'l Trust for Historic Preservation v. 1750 K Inv. P'ship*, 100 F.R.D. 483, 487 (E.D. Va. 1984) ("It has been held that where there is an independent basis of jurisdiction the cross-claim can be treated as if it were an original complaint for purposes of jurisdiction, thereby surviving dismissal of the complaint from which the cross-claim arose."); *Podiatry Ins. Co. of Am. v. Falcone*, No. 3:10-cv-1106, 2011 WL 1750708, at *4 (S.D. W. Va. Feb. 25, 2011) (considering crossclaims asserted against different parties together and dismissing all for lack of subject matter jurisdiction). If the court treats M.B. Kahn's crossclaims together, it must consider *all* parties to its crossclaims for purposes of determining whether diversity. The Subcontractors, as crossclaim defendants, must be considered in the jurisdictional analysis.

There is no dispute that several of the Subcontractors are South Carolina corporations. M.B. Kahn is also a citizen of South Carolina for jurisdictional purposes. [ECF No. 83 at ¶ 18 (admitting it is a South Carolina corporation with its principal place of business in South Carolina).] Therefore, South Carolina citizens appear on both sides of M.B. Kahn's crossclaims. The court concludes that complete diversity is lacking in M.B. Kahn's crossclaims, and, as a result, they fail to survive dismissal of the original complaint. *See, e.g., Nissan N. Am., Inc. v. Wayzata Nissan, LLC*, No. 14-1446, 2014 WL 3687242, at *6 (D. Minn. July 24, 2014) ("[T]he counterclaims suffer from the same defects in subject matter jurisdiction as the original claim. As a result, dismissal of the counterclaims without prejudice is warranted."). The court lacks subject matter jurisdiction over M.B. Kahn's crossclaims, and the following motions are rendered **MOOT**: **ECF Nos. 244, 251, 328, 377, 378, 398, 400,** and **580**.[64]

---

[64] The court acknowledges that Southern Pilot's motion references a "lack of diversity jurisdiction between the parties," but it is unclear whether it is referencing diversity with respect to the crossclaims or in relation to the action as a whole. [ECF No. 580 at ¶ 6.]

### 3. Conditional Motion to Sever: Third-Party Claims and Crossclaim Against AAIC.

In the Conditional Motion to Sever, M.B. Kahn states that in the event the court dismisses Travelers' Complaint for lack of subject matter jurisdiction, the court should "sever" its third-party claims "against American Guarantee, BB&T, Admiral, and Crescent South, as well as its crossclaim against AAIC, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00." *Id.* at p.3, ¶ 4. The motion presents two issues: (1) does the court have an independent jurisdictional basis to decide the claims and (2) should the court "sever" the claims in the manner requested by M.B. Kahn. [ECF No. 593.][65]

#### i. Issue 1: Jurisdiction Over Claims as Pleaded.

Third-party claims are governed by Rule 14, FRCP. It provides: To invoke Rule 14, FRCP, a defendant serves a summons and third-party complaint "on a nonparty who is or may be liable to it for all or part of the claim [asserted] against it." Thus, third-party claims differ in significant respects from counterclaims and crossclaims. In one sense, third-party claims are independent, much like complaints. They require a separate summons and are directed at non-parties to the existing litigation. In another sense, however, they are dependent on the original complaint. Third-party claims require a very specific connection to the original claims—derivative liability. "The third[-]party claim must be 'derivative' of the plaintiff's claim because '[d]erivative liability is central to the operation of Rule 14.'" *Scott v. PPG Indus., Inc.*, 920 F.2d 927 (4th Cir. 1990) (unpublished table opinion) (quoting *Watergate Landmark Condo. Unit Owners' Ass'n v. Wiss, Janey, Elstern Assoc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987)). Such a claim says, "If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant

---

[65] AAIC, American Guarantee, Admiral, Crescent South, BB&T oppose M.B. Kahn's motion as unripe and for its failure to meet the requirements of Rule 21, FRCP. [ECF Nos. 595, 597, 600, 607, 609.]

is derivatively liable and must reimburse me for all or part . . . of anything I must pay plaintiff." *Watergate Landmark*, 117 F.R.D. at 578.

As to the issue here, compliance with Rule 14, FRCP does not automatically provide the court with subject matter jurisdiction over a third-party claim. *See Carolina Asphalt Paving, Inc. v. Balfour Beatty Constr., Inc*., 225 F.R.D. 522, 525 (D.S.C. 2004) ("It is well settled that Rule 14 does not provide an independent basis for subject matter jurisdiction."). Though much like compulsory counterclaims and crossclaims, "ancillary subject matter jurisdiction over a third-party claim . . . exists *if the court has subject matter jurisdiction to hear the main claim* out of which the third-party claim arises." *Paxton v. Southern Penn. Bank*, 93 F.R.D. 503, 505 (D. Md. 1982) (emphasis added).[66] "Of course, if the principal claim has been dismissed because of a lack of subject-matter jurisdiction,"—as is the case here—"the third-party claim always *must be dismissed unless* it can be supported by independent jurisdictional grounds." Miller, Kayne, & Spencer, *supra*, § 1444 (emphasis added). In this case, absent the existence of independent federal question or diversity jurisdiction over M.B. Kahn's third-party claims, this court must dismiss the claims.

M.B. Kahn has two "groups" of third-party claims. The first includes three entities: Zurich (by way of crossclaim), American Guarantee, and BB&T. [ECF No. 83 at ¶¶ 207–314. The second includes two entities: Crescent South and Admiral. *Id.* at ¶¶ 386–419. As to both groups, M.B. Kahn alleges the existence of diversity jurisdiction. *Id.* at ¶¶ 207–211, 213 ("This court has subject-matter jurisdiction over the dispute between M.B. Kahn, Zurich, American Guarantee, and BB&T pursuant to 28 U.S.C. § 1332[.]"), 386–388, 393 ("This court has subject-matter jurisdiction over the dispute between M.B. Kahn and Crescent South pursuant to 28 U.S.C. § 1332[.]").

---

[66] *But see* 28 U.S.C. § 1367(b) (providing that in diversity actions, district courts will not have supplemental jurisdiction over non-diverse persons made parties under Rule 14, 19, 20 or 24 by the plaintiff).

Having independently reviewed the allegations of citizenship, the court is convinced that M.B. Kahn has met its burden at this stage of properly alleging complete diversity. The court will allow the claims to proceed pursuant to their independent jurisdictional bases.

### ii. Issue 2: Motion to Sever.

The Conditional Motion to Sever complicates things. Rather than ask the court to exercise jurisdiction over the claims as pleaded, M.B. Kahn asks the court to discard or ignore Zurich as a party to the first group of claims (without explanation) and to carveout its crossclaim against AAIC (an entity that is not a party to the existing third-party claims). The court is not so inclined.[67]

The procedural posture of this case is complicated. In many respects, the court sees the complications as products of a hastily filed case without full consideration of jurisdictional requirements. But the court will not further complicate matters by haphazardly manipulating claims in a pleading.

AAIC is named as a party to M.B. Kahn's crossclaims against the Subcontractor Insurers. It is not named as a party to either group of third-party claims. As discussed in section II(A)(2), *supra*, the court lacks complete diversity over M.B. Kahn's crossclaims. Therefore, it cannot proceed with the merits of those claims. In its motion, M.B. Kahn fails to identify any reason why this court should now carveout AAIC and allow the crossclaim against it to proceed with the third-party claims. In this regard, the court agrees with the opponents to the Conditional Motion to Sever that M.B. Kahn has not met the requirements for Rule 21, FRCP. [*See, e.g.,* ECF No. 595 at p.6.] The court declines to sever the crossclaim against AAIC and allow it to proceed with M.B. Kahn's third-party claims.

---

[67] Perhaps M.B. Kahn can come to this result using other rules of civil procedure, *see* Fed. R. Civ. P. 15, Fed. R. Civ. P. 41, but the severance is not the appropriate vehicle.

For similar reasons, the court declines to disregard Zurich as a party to the first group of third-party claims.  While Zurich is not a third-party, it is a party to the claims M.B. Kahn asserts against American Guarantee, a third-party defendant.  M.B. Kahn offers no explanation for why it should be allowed to "sever" the third-party claims against American Guarantee and BB&T from those same claims asserted against Zurich.[68]

M.B. Kahn's Conditional Motion to Sever, **ECF No. 593**, is, accordingly, **GRANTED** to the extent it asks the court to retain independent jurisdiction over its two groups of third-party claims, but **DENIED** to the extent it seeks to exclude Zurich and sever its crossclaims against AAIC.

### B.  Kahn Development's Counterclaims and Crossclaims.

Kahn Development has not taken a position on whether its counterclaims and crossclaims should survive dismissal of Travelers' Complaint.  Even still, before addressing the dispositive motions directed at Kahn Development's claims, the court must consider whether an independent jurisdictional basis exists over the claims and, if it does, whether it should exercise jurisdiction.

Kahn Development's jurisdictional allegations are sparse.  It admits the citizenship allegations in Travelers' Complaint, [ECF No. 419 at ¶¶ 9–12 (admitting Travelers' paragraphs 19–54)], and states generally that "[t]he Court has jurisdiction over this Amended Counterclaim and Cross-Claim."  *Id.* at ¶ 47.  Whether Kahn Development believes the court has an independent jurisdictional basis over the counterclaim and crossclaim, as opposed to supplemental jurisdiction stemming from Travelers' Complaint, is unclear.  However, it seems that Kahn Development, a South Carolina citizen, is completely diverse from every other entity named as a counterclaim-defendant or crossclaim-defendant.  Thus, even if Kahn Development was relying on supplemental

---

[68] Perhaps an oversight on M.B. Kahn's part, given that Zurich and American Guarantee jointly answered the third-party/crossclaims.  [ECF No. 260.]

jurisdiction when it drafted its pleading, an independent jurisdictional basis appears to exist. The court is, thus, left with the "usual rule" announced in *Drain*. 191 F.3d at 559. The court "may" exercise jurisdiction.

In assessing how to exercise the discretion granted to it by *Drain*, the court cannot help but notice the similarities of positions between M.B. Kahn and Kahn Development. Like M.B. Kahn, Kahn Development moved to dismiss Travelers' Complaint and filed an Answer, asserting its compulsory counterclaims as required by Rule 13(a), FRCP and its crossclaims allowed by Rule 13(g), FRCP. [*See* ECF Nos. 97, 98, 419.][69]  In its Answer, Kahn Development affirmatively stated it was "reserving its Motion to Dismiss." [ECF No. 419 at p.2.]

In M.B. Kahn's case, the court concluded that it would not compel M.B. Kahn to continue to litigate its counterclaims in this action, given that it moved to dismiss the original complaint, the claims asserted were compulsory, and the original complaint was dismissed for lack of jurisdiction. Seemingly, the same conclusion would extend to Kahn Development's counterclaims. Before the court makes that leap, one distinction is worth  mentioning. Unlike M.B. Kahn's motion to dismiss, Kahn Development's motion was based solely on non-jurisdictional grounds—the failure to join necessary parties. [ECF No. 97.] The issue then is whether Kahn Development's failure to file a jurisdictional motion to dismiss takes it outside of *Drain's* parameters. This court finds that it does not.

First, "[i]t is clear from the procedural record in this case that" Kahn Development "did not seek to avail [itself] of a federal forum." *Drain*, 191 F.3d at 559. From the outset, Kahn Development disputed whether all parties were properly before the court, asked for dismissal of

---

[69] Kahn Development thereafter filed an Amended Answer, which serves as the operative pleading for purposes of this case. [ECF No. 419.]

Travelers' Complaint, and made clear that it was asserting its claims subject to its then-pending motion to dismiss. Second, the same notions of judicial economy and fairness recognized in *Drain*, apply equally to Kahn Development. Kahn Development asked this court to dismiss Travelers' Complaint. "To force [it], by virtue of counterclaims that federal rules of procedure compelled [it] to bring or risk forfeiting to remain in federal court after the original complaint has been dismissed for want of jurisdiction would be to subvert the very notions of judicial economy and fairness to litigants that underlie this rule of procedure." *Id.* The fact that Travelers' Complaint was dismissed for a reason other than the one raised by Kahn Development does not impact these core concepts. Third, and finally, this conclusion is in keeping with the general rule that adjudication of a compulsory counterclaim post-dismissal of an original complaint is discretionary. *See id.* (stating "usual rule" is district court "may exercise jurisdiction . . . after the original claim has been dismissed for lack of jurisdiction").

Finally, Kahn Development's crossclaims against the Subcontractor Insurers are intertwined with its counterclaim against Travelers. [ECF No. 419 at ¶¶ 56–62.] Through both, Kahn Development seeks a declaration "regarding the rights, duties, and responsibilities of the Plaintiffs and the other insurance carrier defendants and excess insurance carrier defendants to Kahn Development, VAS Condominium, LLC, and Village at Sandhill, LLC." *Id.* at ¶ 61. Even though an independent jurisdictional basis may exist over the crossclaims, the court concludes that just as it should decline to exercise jurisdiction over Kahn Development's counterclaim, the same logic extends to the crossclaims.

Kahn Development's filings and positions on the record suggest that it asserted affirmative claims to protect its interests in the event Travelers' Complaint was not dismissed. For these reasons, the court reads Kahn Development's filings to indicate that it does not desire the court to

exercise its independent basis of jurisdiction over the counterclaim and crossclaim. In keeping with *Drain*, this court will not compel Kahn Development to litigate its claims before this court after the dismissal of Travelers' case. The following motions are ***conditionally*** rendered **MOOT**: **ECF Nos. 272, 273, 434, 435, 458, 459, 473, 498, 499,** and **500**.[70]

### C. Zurich and Hartford's Counterclaims and Crossclaims.

The final group of claims this court must address in terms of jurisdiction are those of Zurich and Hartford. Zurich and Hartford are Developer Insurers. Their counterclaims against Travelers and crossclaims against all other defendants are almost mirror images of Travelers' original claims. The same rules governing jurisdiction post-dismissal of Travelers' Complaint apply. To survive dismissal of Travelers' Complaint for lack of subject matter jurisdiction, the claims must have independent jurisdictional bases. For this case, because federal question jurisdiction is not implicated, Zurich and Hartford must be completely diverse from every other counter-defendant and crossclaim defendant. They are not.

In response to Travelers' Complaint, Zurich admits it is a New York Corporation and alleges its principal place of business is in Illinois. [*See* ECF No. 1 at ¶ 24 (alleging Zurich's place of incorporation and principal place of business); ECF No. 231 at ¶ 24.] Thus, for this court to have diversity jurisdiction over Zurich's counterclaims and crossclaims, no counterclaim defendant or crossclaim defendant can be citizens of New York or Illinois. Because at least three of the defendants to Zurich's claims are Illinois citizens, complete diversity is lacking. [*See* ECF No. 1 at ¶ 29 (Travelers alleging Illinois citizenship for Illinois Union), ECF No. 150 (Illinois Union

---

[70] In the event Kahn Development's position differs from that stated by the court herein or if any party to Kahn Development's claims believes the court is *required* to exercise jurisdiction following the dismissal of Travelers' Complaint for lack of subject matter jurisdiction, it must so state within the time provided in Rule 59(e), FRCP. If no motions are filed within the requisite period, the conditional ruling becomes final.

admitting it is an Illinois corporation with its principal place of business in Pennsylvania), ECF No. 1 at ¶ 35 (Travelers alleging Evanston is an Illinois citizen), ECF No. 206 at ¶ 8 (Evanston admitting it is an Illinois citizen), ECF No. 1 at ¶ 22 (Travelers alleging Hartford is an Illinois citizen), ECF No. 256 at ¶ 22 (Hartford admitting it is an Illinois citizen).]

Hartford suffers the same result.  In response to Travelers' Complaint, Hartford admits it is an Illinois citizen.  [ECF No. 1 at ¶ 22 (Travelers alleging Hartford is an Illinois citizen), ECF No. 256 at ¶ 22 (Hartford admitting it is an Illinois citizen).]  With an Illinois citizen on one side of the counter and crossclaim "v," complete diversity mandates that no counter or crossclaim defendant also share Illinois citizenship.  Zurich, Illinois Union, and Evanston—defendants to Hartford's claims—share Illinois citizenship.

This court lacks an independent jurisdictional basis to hear Zurich and Hartford's counterclaims and crossclaims.  As a result of this ruling, the following motions are **MOOT**:  **ECF Nos. 329, 330, 333, 336, 338, 370, 373, 374, 426, 447, 448, 464, 478, 354, 359, 363, 372, 375, 376, 463, 467, 468,** and **476.**

**III. Where We Stand Now:  A Revised Visual.**



## IV. The Surviving Motions.[71]

Coming out of the jurisdictional analysis, four motions remain. The court is left with two dispositive motions: (1) BB&T's Motion to Dismiss M.B. Kahn's third-party claims and (2) Crescent South's Motion to Dismiss M.B. Kahn's third-party claims. [ECF Nos. 337, 394.] Relatedly, M.B. Kahn's Motion to Bifurcate also remains pending. [ECF No. 84.] The final contested motion is M.B. Kahn's Motion to Strike Admiral's Attorneys' Fees Request in its prayer for relief. [ECF No. 265.]

### A. BB&T's Motion to Dismiss: Ripeness.

BB&T is a member of the first "group" of M.B. Kahn's two groups of third-party claims. M.B. Kahn asserts two third-party claims against BB&T: (1) breach of contract and (2) negligence. [ECF No. 83 at ¶¶ 304–314.] These claims are based on M.B. Kahn engaging BB&T as its "broker to procure . . . commercial general liability and umbrella liability coverage for its business operations." *Id.* at ¶ 310; *see also id.* at ¶ 216 ("Before, during, and after the construction of the Project, BB&T provided insurance brokerage services to M.B. Kahn."), ¶¶ 305, 311. M.B. Kahn alleges that when it decided to transfer insurance from Travelers to Zurich and American Guarantee, "[m]aintaining continuous and uninterrupted coverage for the Project . . . was a key issue." *Id.* at ¶ 217. Thus, "[i]f one or more" of the Zurich or American Guarantee policies "are found not to provide coverage to M.B. Kahn for the Underlying Lawsuit," M.B. Kahn claims "BB&T breached its duty to procure insurance coverage . . . and/or its duty to check" the policies "for accuracy." *Id.* at ¶¶ 306, 312. If the policies are found not to provide coverage, and if the policies "are not reformed," "M.B. Kahn would be damaged by BB&T's" actions. *Id.* at ¶ 313.

---

[71] The court's jurisdictional and other rulings render the following miscellaneous motions **MOOT**: **ECF Nos. 121, 122, 488, 489, 492, 493, 533,** and **549**.

BB&T filed a Motion to Dismiss the third-party claims pursuant to Rule 12(b)(1), arguing the claims are not ripe for judicial review and, alternatively, pursuant to Rule 12(b)(6) for failure to state a legal claim for damages. [ECF No. 337.] BB&T's position is there are too many "ifs" to make M.B. Kahn's claims justiciable. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993) ("[The] ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."). The Underlying Case remains pending. M.B. Kahn has not been found liable to the plaintiffs in that action. A factfinder has not determined whether wrongdoing occurred during Zurich and American Guarantee's coverage periods. And there has not been a determination that the Zurich or American Guarantee policies do not provide coverage.

BB&T asks this court to follow the reasoning in *First Specialty Ins. Corp. v. RHS Enters., LLC*, No. 6:09-cv-1325, 2010 WL 11537546 (D.S.C. Mar. 29, 2010) and dismiss M.B. Kahn's claims as unripe. There, the Honorable R. Bryan Harwell concluded that third-party claims against a broker were not ripe where the injury alleged by the third-party plaintiff was contingent upon a determination of a related action. *Id.* at *2. The court dismissed the claims without prejudice "to pursue . . . when, and if, they ripen." *Id.* at *3.

In response, M.B. Kahn argues that third-party claims by their very nature are contingent and allowed pursuant to Rule 14, FRCP. [ECF No. 409 at p.6.] M.B. Kahn cites various cases in which third-party claims exist. *Id.* at p.8. But, when it comes to *First Specialty*, M.B. Kahn's only response is that it is "not binding precedent." *Id.* at p.10.[72]

The court acknowledges that it is not bound by the analysis in *First Specialty*, but it finds the decision persuasive here. It addresses the precise issue and types of claims currently before this

---

[72] BB&T replied on July 24, 2020. [ECF No. 432.]

court. The court finds the decision well-reasoned, logical, and sees no reason why it should not follow suit. As in *First Specialty*, M.B. Kahn's alleged damages "are entirely contingent." *Id.* at 2010 WL 11537546, at *2. If the plaintiffs in the Underlying Action are not successful in their claims, M.B. Kahn will not require indemnification. Further, even if M.B. Kahn is found liable in the Underlying Case, if the declaratory judgment claim results in a finding that coverage exists, M.B. Kahn "will have no damages stemming from [BB&T's] alleged negligence because [Zurich and/or American Guarantee] will be required to defend and indemnify." *Id.*

This court did not have to address the substance of many of the dispositive motions in this case. But if its review of those motions left the court with any impression, it is this: Ripeness is too often disregarded due to impatience. *See Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199–201 (4th Cir. 2019) (considering ripeness and noting that "practical value cannot overcome this fundamental limitation on our jurisdiction"). BB&T's Motion to Dismiss, **ECF No. 337**, is **GRANTED**. M.B. Kahn's third-party claims against BB&T are hereby **DISMISSED** *without prejudice* to M.B. Kahn's ability to pursue its claims in the event they ripen.

### B. Crescent South's Motion to Dismiss: Personal Jurisdiction.

Crescent South is a member of M.B. Kahn's second "group" of third-party claims. [ECF No. 83 at ¶¶ 386–419.] M.B. Kahn asserts claims against Crescent South and Admiral related to certain Certificates of Insurance that were issued to a subcontractor, Contractors of Atlanta. *Id.* at ¶ 398. Contractors of Atlanta "contracted with" Crescent South to obtain insurance. *Id.* at ¶ 406. Thereafter, Crescent South issued Certificates of Insurance to Contractors of Atlanta, which indicated that M.B. Kahn was an additional insured and that Contractors of Atlanta had an occurrence-based policy. *Id.* at ¶¶ 399, 404. M.B. Kahn alleges Crescent South issued the Certificates of Insurance as an agent of Admiral. *Id.* at ¶ 408. Admiral issued the policies, which

were "claims-made rather than occurrence-based." *Id.* at ¶ 404. M.B. Kahn tendered to Admiral for defense and indemnity, and Admiral disclaimed coverage. *Id.* In this action, M.B. Kahn seeks damages for Crescent South's and Admiral's alleged negligence or negligent misrepresentations in issuing Certificates of Insurance that were inaccurate and/or misleading.

### 1. Positions of the Parties.

Crescent South filed a Motion to Dismiss, arguing this court lacks personal jurisdiction. [ECF No. 394.] It argues that it is a Georgia company that has never done business in South Carolina. [ECF No. 394-1 at p.2, ¶ 3.] Further, it contends that it is not now, nor has it ever been licensed to sell insurance in South Carolina. *Id.* at p.3, ¶ 3. It does not maintain an office here. The subject policy was sold to and paid for by Contractors of Atlanta, a Georgia corporation. *Id.* at ¶¶ 4, 5, 14. Crescent South argues this court lacks general jurisdiction over it because it is not incorporated in South Carolina, it does not have its principal place of business in South Carolina, and it does not have sufficient continuous and systematic contacts to render it at home here. *Id.* at pp.6–8. It also argues that this court lacks specific jurisdiction over it because "there is scant and indirect contact, if any at all, between Crescent South" and South Carolina. *Id.* at p.8. The contact complained of—issuance of the Certificates of Insurance—was not directed at South Carolina. *Id.* According to Crescent South, this case is factually similar to *KCHM, Inc. v. Mid-Continent Casualty Company*, 264 F. Supp. 3d 697 (E.D.N.C. 2017), and, just as the court dismissed the insurance carrier for lack of personal jurisdiction in that case, this court should dismiss Crescent South.

M.B. Kahn makes alternative arguments in response. [ECF No. 439.] First, it argues the court has specific jurisdiction over Crescent South.[73] M.B. Kahn relies on the Certificates of Insurance

---

[73] M.B. Kahn concedes that "[g]iven the representations in the affidavits Crescent South filed in support of the Motion, M.B. Kahn does not presently maintain that this court has general jurisdiction over Crescent South." [ECF No. 439 at p.6.] The court agrees that it lacks general

attached to Crescent South's motion, [*see* ECF No.394-11], which identify M.B. Kahn as an additional insured and "Certificate Holder" and list its Columbia, South Carolina address. [ECF No. 439 at p.7.] M.B. Kahn notes that the Certificates of Insurance reference the project number, which "could only have been obtained from M.B. Kahn's subcontract with Contractors of Atlanta." *Id.* at p.7, n.6; *see also* [ECF No. 439-1]. Second, and alternatively, M.B. Kahn asks the court to defer ruling until after jurisdictional discovery.

### 2. Personal Jurisdiction: The Standard.

The plaintiff has the burden to show that jurisdiction exists. *See In re Celotex Corp.,* 124 F.3d 619, 628 (4th Cir. 1997); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir. 2003). Generally, when a district court decides a pre-trial motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. The court is to construe the pleadings, affidavits, and other supporting documents presented to the court in the light most favorable to plaintiff by assuming credibility and drawing all inferences and resolving all factual disputes in the plaintiff's favor. *See Masselli & Lane, PC v. Miller & Schuh, PA,* 215 F.3d 1320 (4th Cir. 2000) (table opinion); *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993); *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989). In doing so, however, the court need not "'credit conclusory allegations or draw farfetched inferences.'" *Masselli,* 215 F.3d at *1 (quoting *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir. 1994)).

To determine whether personal jurisdiction exists over a non-resident defendant, the court must perform a two-step analysis. The court first determines whether the forum state's long-arm statute

---

jurisdiction over Crescent South. It is not incorporated in South Carolina, its principal place of business is not in South Carolina, and it is plainly not rendered at home here. Thus, this court need only decide whether it has specific jurisdiction over Crescent South.

provides a basis for asserting jurisdiction over the defendant. *See Young v. FDIC,* 103 F.3d 1180, 1191 (4th Cir. 1997). Then, the court determines whether the exercise of personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.,* 201 F.3d 314, 317 (4th Cir. 2000). Because South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause, *Foster v. Arletty 3 Sarl,* 278 F.3d 409, 414 (4th Cir. 2002), the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal citations omitted).

The analytical framework for determining whether minimum contacts exist differs according to which type of personal jurisdiction—general or specific—is alleged. *See generally ESAB Grp. v. Centricut,* 126 F.3d 617, 623–24 (4th Cir. 1997). Only specific jurisdiction is at issue here. A defendant has minimum contacts with a jurisdiction sufficient to subject it to specific jurisdiction in the forum state if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1990). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *see also CFA Inst. v. Inst. Of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009) (a party purposefully availing itself of the privilege of conducting business in the state gives it "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign").

In sum, the court considers: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citations omitted). While "[i]t is well established that a single act can support jurisdiction if that act has a 'substantial connection' with the forum and gives rise to, or figures prominently in, the cause of action under consideration," *Campbell v. Johnson & Towers, Inc.,* 123 F. Supp. 2d 329, 335 (D.S.C.1999), the relationship "must arise out of contacts that the 'defendant' *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

### 3. Analysis.

Given the notable similarities between this case and *KCHM*, the court begins its analysis there. The plaintiff, KCHM, was a North Carolina corporation serving as the construction manager on a project in West Virginia. 264 F. Supp. 3d at 699. It contracted with S&S Communications, an Oklahoma corporation, to perform certain work on the project. *Id.* The contract required S&S Communications to obtain insurance coverage and name KCHM as a conditional additional insured on the policy. *Id.* at 700. S&S Communications obtained a policy from Mid-Continent, an Ohio corporation with its principal place of business in Oklahoma, and paid the premiums. *Id.* at 699, 700.

Later, an accident occurred at the West Virginia project-site. Lawsuits followed. In North Carolina, KCHM filed suit against Mid-Continent alleging claims for unfair trade practices, breach of contract, breach of the duty of good faith and fair dealing, and for a declaration regarding

coverage available pursuant to the policy. Mid-Continent moved to dismiss for lack of personal jurisdiction. This all sounds quite familiar.[74]

As to the existence of specific jurisdiction, KCHM's main argument was that the North Carolina long-arm statute accords personal jurisdiction over parties to insurance contracts that provide benefits in North Carolina, and, since the insurance policy provided broad coverage to include North Carolina, specific jurisdiction existed. *Id.* at 701. Mid-Continent argued that KCHM's argument was misplaced because KCHM was not a policyholder—only S&S Communications was a policyholder. *Id.* at 702. The court agreed with Mid-Continent. Because KCHM relied on the Certificates of Insurance to support its argument regarding specific jurisdiction, the court looked to the language therein. It found that the disclaimers made it clear that the Certificates of Insurance "confer no right to the certificate holder and are subordinate to the terms of the policy, *held by S&S*." *Id.* (emphasis added). Consequently, the court concluded that "KCHM can through no formulation be considered the policyholder of the subject policy." *Id.*

Further, the court found that "[t]he policyholder S&S [Communications] is not present in North Carolina and *the accident* from which the claims arose *did not take place in North Carolina*." *Id.* (emphasis added); *see also id.* ("[T]he accident took place in West Virginia, not North Carolina where plaintiffs seek to determine coverage."). Thus, the case involved "an insurance policy issued in Oklahoma to an Oklahoma corporation and an accident which took place *in West Virginia*." *Id.* (emphasis added). "[T]he only connection to North Carolina" was KCHM. *Id.* The

---

[74] One distinction, of course, is the additional player in this case—Crescent South. Crescent South issued the Certificates of Insurance and Admiral issued the policies.

court found "Mid-Continent's contact with North Carolina [] insufficient to support . . . specific jurisdiction." *Id.*

KCHM is a direct application of the prohibition outlined in *Walden*: "[T]he plaintiff cannot be *the only link* between the defendant and the forum." 571 U.S. at 285 (emphasis added). Because Mid-Continent's "conduct" in issuing the policy lacked "the necessary connection with the forum State," North Carolina, jurisdiction was lacking. *Id.*; *see also id.* at 284 ("Due process limits on the State's adjudicative authority protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties.").

This Court agrees with Crescent South that *KCHM* is analogous to the present case in many respects. Just as *KCHM* involved policies issued by a non-citizen corporation to a non-citizen corporation outside the forum, this case involves Certificates of Insurance issued in Georgia, by a Georgia corporation, to a Georgia corporation. M.B. Kahn "did not negotiate the terms . . . nor is there a buyer/seller relationship between" M.B. Kahn and Crescent South. *Id.* Crescent South "does not have an office or own property in" South Carolina. *Id.* Contractors of Atlanta, a Georgia corporation, obtained the policy from Crescent South; thus, "it did not reach into [South Carolina] to sell or negotiate the policy at issue." *Id.* The Certificates of Insurance include the same or similar disclaimers, stating they "confer[] no rights upon the certificate holder." [ECF No. 394-11.] And the policyholder, Contractors of Atlanta, "is not present in [South Carolina]." *Id.*

There is also a difference, however. A difference this court believes to be worthy of inquiry. In *KCHM*, the court repeated several times that the underlying accident did not take place in the forum state of North Carolina. 264 F. Supp. 3d at 702 ("[T]he accident from which the claims arose did not take place in North Carolina."); *see also id.* ("Here, however, the accident took place in West Virginia, not North Carolina where plaintiffs seek to determine coverage."); *id.* ("This

case involves an insurance policy issued in Oklahoma to an Oklahoma corporation and an accident which took place in West Virginia."). Again, the *only* connection to North Carolina was the plaintiff's citizenship and its connection to the policy and project. In this case, the underlying "accident," *i.e.*, alleged construction defect, did take place in the forum state.[75]

This court recognizes that the fact that the underlying issue took place in South Carolina does not alone serve as a basis for it to exercise specific jurisdiction over Crescent South. But it is relevant to the extent it informs "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). M.B. Kahn's opposition notes that information in the Certificates of Insurance suggest that even though the policyholder is a Georgia Corporation, Crescent South was aware that the project for which Contractors of Atlanta was requesting the certificates was in South Carolina. Crescent South, perhaps inadvertently so, emphasized this distinction in its attempt to distinguish *Zurich American Insurance Co. v. Renasant Insurance Co.*, No. 8:10-cv-1769, 2011 WL 722972 (M.D. Fla. Feb. 23, 2011).[76] [ECF No. 484 at p.9.] It stated: "Of course, [the] motion to dismiss was denied because its customer was a Florida corporation *doing work in Florida*." *Id.* (emphasis added). Even if this court follows *KCHM* and finds that M.B. Kahn "can through no formulation be considered the policyholder of the subject policy," there remains the possibility that in issuing the Certificates of Insurance, Crescent South knew that Contractors of Atlanta was doing work in South Carolina.

---

[75] Crescent South takes a narrower view of "the underlying event," suggesting it is "whether M.B. Kahn would be named as an additional insured." [ECF No. 394-1 at ¶ 12.] That event, it contends, "took place in Georgia." *Id.* Further, it notes that any breach of a duty would have taken place in Georgia. The court is not concluding at this juncture that Crescent South is incorrect in these views, given that the claims asserted against Crescent South relate directly its negligence or negligent misrepresentations in the creation of the Certificates of Insurance, as opposed to coverage. The issue, however, is one that will be fleshed out in the next steps.

[76] *Zurich* involved a Mississippi defendant that sold an insurance policy to a Florida customer and sent certificates of insurance to the general contractor in Florida.

This is a close question. Crescent South's contacts with South Carolina are "scant" and perhaps "indirect," as it suggests, [ECF No. 394-1 at p.8, ¶ 9.], but they exist—unlike in *KCHM*. The court cannot say definitively that Crescent South's conduct is sufficiently connected to South Carolina that it "should reasonably anticipate being haled into court" here. *Woodson*, 444 U.S. at 297. It similarly cannot say the opposite. The court is therefore hesitant to dismiss Crescent South at this time.

In the end, this court may conclude that the distinction noted above is one without a difference. It isn't prepared to make that conclusion just yet. The court believes limited jurisdictional discovery and additional briefing is appropriate. The parties are hereby **DIRECTED** to conduct limited discovery on the nature and extent of Crescent South's knowledge of the South Carolina project as it relates to Contractors of Atlanta's request for the Certificates of Insurance and its corresponding contacts with South Carolina, if any, as they pertain specifically to the claims in this action. Discovery is limited to the personal jurisdiction issue only, and it must be completed within sixty (60) days of the entry of this Order. Crescent South's supplemental briefing must be filed within fourteen (14) days after the close of jurisdictional discovery. M.B. Kahn's supplemental briefing is due fourteen (14) days after the filing of Crescent South's supplemental briefing. As a result of the order directing jurisdictional discovery, a ruling on [**ECF No. 394**] is hereby **DEFERRED** pending conclusion of discovery and additional briefing.

### C. M.B. Kahn's Motion to Bifurcate.

This case has transformed in many significant respects since M.B. Kahn filed its bifurcation motion. [ECF No. 84.] The case that exists now is not the case that existed on May 8, 2020. Given these changes, the court believes it is in the interest of economy and judicial efficiency to **DENY** the motion, **ECF No. 84**, *without prejudice* to refile.

### D.  M.B. Kahn's Motion to Strike Admiral's Fees Request.

In Admiral's Answer to M.B. Kahn's third-party complaint, it includes a prayer that "the costs and reasonable attorneys' fees Admiral incurs defending this Action be taxed to M.B. Kahn." [ECF No. 198 at p.40 "WHEREFORE" ¶ 3.]  M.B. Kahn filed a Rule 12(b) and (f) motion to strike the request for attorneys' fees from the pleading, given that Admiral did not allege a contractual or statutory basis for the recovery of attorneys' fees.  [ECF No. 265.]  Admiral responds that Rule 12(b)(6) does not apply because it has not made a "claim" for attorneys' fees; Rule 12(f) does not apply because it does not include an "insufficient defense," "redundant, immaterial, impertinent, or scandalous matter;  Rule 8, FRCP does not require a party to include authority for its requested relief; and M.B. Kahn's request seeks to limit damages that may be available to Admiral should the court find that M.B. Kahn's claims are without "any legal basis."  [ECF No. 327.]

The court is compelled to agree with M.B. Kahn.  Courts in this District have stricken attorneys' fee requests in a pleading where the claims and defenses therein do not identify a contract or statute that authorizes the recovery of fees.  *See, e.g., Integrity Worldwide, Inc. v. Int'l Safety Access Corp.*, No. 0:14-cv-213, 2015 WL 1297823, at *2–*3 (D.S.C. Mar. 23, 2015) (striking attorneys' fee request accompanying a fraudulent conveyance claim).  Admiral concedes that its pleading does not identify a statute or contract authorizing fees and any fee request it may have would arise *post hoc*.  [ECF No. 327 at p.4.]  Thus, the court **GRANTS** M.B. Kahn's motion, [**ECF No. 265**], and the request for attorneys' fees in Paragraph 3 of Admiral's WHEREFORE paragraph is stricken, ***without prejudice*** to any *post hoc* attorneys' fees request.

### CONCLUSION

As outlined above, the court concludes it is without subject matter jurisdiction to decide Travelers' case, it cannot realign the parties, and even if it realigned the parties, it would still lack

subject matter jurisdiction over Travelers' claims.  In accordance with these conclusions, the court rules as follows:

- Travelers' Motion to Realign, **ECF No. 494**, is **DENIED**.

- M.B. Kahn's Motion to Dismiss, **ECF No. 73**, and Employers Mutual's Motion to Dismiss, **ECF No. 541**, are **GRANTED** to the extent they argue this court lacks subject matter jurisdiction for lack of complete diversity between the parties. Travelers' Complaint is **DISMISSED** *without prejudice* for lack of subject matter jurisdiction.

- The following motions are rendered **MOOT** by the court's first two rulings:    **ECF Nos. 97, 126, 128, 142, 154, 159, 163, 165, 197, 218, 242, 247, 287, 452,** and **514**.

- M.B. Kahn's conditional motion to sever, **ECF No. 593**, is **GRANTED in part** and **DENIED in part**.  It is granted to the extent  to the extent it asks the court to retain independent jurisdiction over its two groups of third-party claims, but denied to the extent it seeks to exclude Zurich and sever its crossclaims against AAIC.

- In considering M.B. Kahn's conditional motion to sever, the court also concludes that it lacks subject matter jurisdiction over M.B. Kahn's crossclaims.  As a result, the following motions are rendered **MOOT**: **ECF Nos. 244, 251, 328, 377, 378, 398, 400,** and **580**.
- For the reasons, the motions related to Kahn Development's claims are ***conditionally*** rendered **MOOT**:  **ECF Nos. 272, 273, 434, 435, 458, 459, 473, 498, 499,** and **500**.

- This court concludes it lacks an independent jurisdictional basis to hear Zurich and Hartford's counterclaims and crossclaims.  As a result of this ruling, the following motions are **MOOT**:  **ECF Nos. 329, 330, 333, 336, 338, 370, 373, 374, 426, 447, 448, 464, 478, 354, 359, 363, 372, 375, 376, 463, 467, 468,** and **476**.

- The court's jurisdictional and other rulings render the following miscellaneous motions **MOOT**:  **ECF Nos. 121, 122, 488, 489, 492, 493, 533,** and **549**.

- BB&T's Motion to Dismiss, **ECF No. 337**, is **GRANTED**.  M.B. Kahn's third-party claims against BB&T are hereby **DISMISSED** *without prejudice* to M.B. Kahn's ability to pursue its claims in the event they ripen.

- As to Crescent South's Motion to Dismiss for Lack of Personal Jurisdiction, the parties are **DIRECTED** to conduct limited discovery in accordance with the parameters outlined above.  Discovery is limited to the personal jurisdiction issue only, and it must be completed within **sixty (60) days** of the entry of this Order.  Crescent South's supplemental briefing must be filed within **fourteen (14) days** after the close of jurisdictional discovery. M.B. Kahn's supplemental briefing is due **fourteen (14) days** after the filing of Crescent South's supplemental briefing.  As a result of the order directing jurisdictional discovery, a ruling on **ECF No. 394** is hereby **DEFERRED** pending conclusion of discovery and additional briefing.

- M.B. Kahn's Motion to Strike, **ECF No. 265**, is **GRANTED** *without prejudice* to any *post hoc* attorneys' fees request by Admiral.

- M.B. Kahn's Motion to Bifurcate, **ECF No. 84**, is **DENIED** without prejudice to refile.

Moreover, as stated early in this Order, the following motions are granted or rendered moot due to consent or lack of opposition:

- M.B. Kahn's Motion to Strike, **ECF No. 410**, is **GRANTED**.  Motorist Mutual's request for attorneys' fees is stricken, ***without prejudice***.

- M.B. Kahn's Motion to Strike, **ECF No. 475**, is **DENIED** as **MOOT**.

- Kahn Development's Motion to Dismiss, **ECF No. 535**, is **GRANTED**, with the consent of Gemini.

- Three Motions to Strike, **ECF Nos, 360, 362, 389**, are **GRANTED** as unopposed.

**IT IS SO ORDERED.**


/s/ Sherri A. Lydon
United States District Judge

March 29, 2021
Florence, South Carolina

78